645 A.2d 423

PUBLIC SERVICE WATER COMPANY; Silver Water
Company; Hickory Water Company; Pocono
Farms East Water Company, Petitioners,

v.

PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.

PUBLIC SERVICE WATER COMPANY; Richard Freeman,
Vice–President; and Aileen Freeman, Petitioners,

v.

PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued May 12, 1994.

Decided June 30, 1994.

464

Robert Tuerk, Gen. Counsel, for petitioner, Public Service Water Co.

Stanley E. Brown, Asst. Counsel, for respondent.

Richard M.S. Freeman, for himself, intervenor.

Before CRAIG, President Judge, SMITH, J., and LORD, Senior Judge.

CRAIG, President Judge.

Public Service Water Company, Silver Water Company, Hickory Water Company, Pocono Farms East Water Company, Richard Freeman, and Aileen Freeman appeal two orders of the Public Utility Commission dismissing Public Service's applications for certificates of public convenience and ordering Public Service to transfer possession and control of three water companies, Silver Hickory Pocono Farms East Water Company, to Robert Boland.

Public Service presents the following issues for review: 1) whether the commission violated Public Service's due process and equal protection rights, 2) whether Robert Boland lawfully transferred the assets of the three water companies to Public Service, pursuant to a contract Public Service entered into with Boland, 3) whether the commission's order to Public Service to transfer the assets of the water companies back to Boland constituted an unconstitutional taking without just compensation, 4) whether the commission lacked jurisdiction to issue the November 2, 1993 order, where the commission did not issue that order, pursuant to 66 Pa.C.S. § 332(h), within ninety days of Public Service's filing of exceptions to the administrative law judge's initial decision, and 5) whether the commission is authorized to fine Public Service for non-compliance with the commission's orders, and if so, whether the fine which the commission imposed on Public Service is excessive.

## FACTS

The facts, as found by the commission, follow. In 1985 the commission issued certificates of public convenience to Robert Boland for three water companies which Boland owns, Silver, Hickory and Pocono Farms Water Company. Without approval from the commission, Boland and Public Service entered into a sales agreement dated December 24, 1991, in which Public Service agreed to purchase all of Boland's shares

of capital stock in the water companies. (RR. 81a.) Pursuant to that agreement, Public Service agreed to pay Boland $750,-000 in installments over a three-year period in exchange for the transfer of the assets of the water companies from Boland to Public Service.

Paragraph 9 of the agreement, entitled "Default by Buyer," lists certain terms and conditions with which Public Service, as buyer, had to comply. Paragraph 9(b)(10), states:

b. In addition to the foregoing, the following shall constitute acts or events of default under the note:

.    .    .    .    .

(10) Failure to file within *30 days* to obtain approvals required to effectuate this transfer and as set forth in paragraph 11.

(Emphasis added.)

Paragraph 11 of the agreement states as follows:

*Government Approvals:* BUYER, immediately after the date of closing, shall proceed expeditiously to *seek the approval of the Pennsylvania Public Utility Commission, Pennsylvania Department of Environmental Resources* and such other federal and state approvals that may be required to affect this transaction. SELLER agrees to cooperate with and assist BUYER.

(RR. 92a. Emphasis added.)

By letter dated June 1, 1992, Public Service requested that the commission inform Public Service as to whether Public Service was exempt from commission regulations with regard to the three water companies. The commission, by letter dated June 16, 1992, informed Public Service that it was required to file applications with the commission for certificates of public convenience for approval of the transfer of the assets of the companies from Boland to Public Service, within thirty days from the date of the commission's notice. Public Service filed the required applications on July 16, 1992.

In the same month, Wild Acres Lakes Property Owners Association, a non-profit organization representing the inter-

ests of a community of 1,100 individuals who own real property in Delaware Township, Pennsylvania, filed a complaint with the commission against Public Service, contending that, because of Public Service's failure to provide adequate service, Wild Acres had been experiencing water shortages. By emergency order dated July 2, 1992, the commission required Public Service to implement certain measures to correct the problem of water shortages.

Wild Acres and the Office of Consumer Advocate filed protests to Public Service's applications for certificates of public convenience. The commission held numerous prehearing conferences addressing the protests and Public Service's applications. In one prehearing conference, Public Service indicated that 1) it was two-and-one-half months behind on its installment sales agreement with Robert Boland, and 2) that a judgment had been entered against Public Service in the amount of the arrears of $650,000. In a later hearing, Public Service announced that counsel for Public Service would recommend to Public Service's board of directors that Public Service withdraw its applications with the commission and allow Boland to take over the companies. (RR. 409a–410a.) The administrative law judge directed Public Service to withdraw its applications.

Public Service did not withdraw its applications. The commission then scheduled a hearing for April 6, 1993.

On April 2, 1993, Wild Acres filed a petition with the commission for interim emergency relief, asserting that Metropolitan Edison Company had served Wild Acres and Hickory Water with a notice of termination of electric service to the water companies for nonpayment of electric bills in the amount of $14,139.31, and requesting that the commission enjoin Metropolitan from terminating the service. The administrative law judge dismissed the petition, noting that Metropolitan had received part of the payment from Hickory.

The commission conducted the scheduled April 6, 1993 hearing to address Public Service's applications and the com-

plaints to the application; at that hearing, Public Service presented witnesses to testify on its behalf.

In a decision dated May 4, 1993, the administrative law judge dismissed Public Service's applications, without prejudice, noting that the applications were defective because of the absence of necessary signatures on the applications. Public Service filed exceptions to the dismissal, contending that it had been denied an opportunity to correct the applications.

Wild Acres filed a petition for interim emergency relief to enjoin Hickory Water from constructing water facilities until the commission had issued a final order in the case. The commission granted the petition.

By order dated November 2, 1993, the commission 1) denied Public Service's Exceptions, 2) adopted the administrative law judge's decision, 3) reviewed the record of the proceedings in the case, 4) noted that Public Service's right to attempt to correct the deficient applications had been preserved based on the dismissal without prejudice, and 5) concluded that an application for a certificate of convenience is a condition precedent to any lawful operation of a public utility, and thus, Public Service could not usurp the commission's police powers by regulating the rates and service of public utilities. In that order, the commission mandated that, no later than ten days from the date of the order, 1) Public Service had to relinquish to Robert Boland, all of the property of the three water companies, and provide Boland with copies of various documents, i.e., written lists of each utility's customers, accounts payable and receivable, tax and insurance information, current employees, engineering reports, pending lawsuits, and cash receipts and disbursements, and 2) Robert Boland resume control and operation of the three companies. The commission further ordered that, within sixty days from the date of the order, 1) Boland provide notice to all known customers, debtors and creditors, 2) inquiries concerning the three utilities should be directed to Boland, and 3) Boland should place a copy of the notice in a local newspaper.

When Public Service did not comply with the above order, the commission, on December 2, 1993, issued a rule to show cause why Public Service should not be fined for noncompliance with the November 2 order.

Public Service filed with the commission a request for reconsideration of the November 2, 1993 order, a petition for supersedeas, and a petition for emergency relief to approve the application for transfer of the certificate of public convenience.

On January 7, 1994, the commission issued an emergency order directing that Public Service comply with the November 2, 1993 order within forty-eight hours, and that failure to comply would result in a fine of $66,000. By order dated February 7, 1994, the commission 1) denied Public Service's request for reconsideration, petition for emergency relief, and petition for supersedeas, 2) adopted its January 7, 1994 emergency order, 3) again ordered Public Service to transfer ownership and possession of the water companies to Boland, and 4) imposed a fine of $66,000 upon Public Service for failing to comply with the commission's orders.

Public Service filed with this court a petition for review of the commission's November 2, 1993 and February 7, 1994 orders. Public Service then filed with this court a request for clarification and an application for supersedeas, which this court denied.

The commission filed an action in mandamus in this court to compel Public Service to comply with the commission's November 2 order. This court granted the commission's application.

Public Service's appeal of the commission's November 2, 1993 and February 7, 1994 orders is now before this court.

### ANALYSIS

■ When reviewing the commission's findings and conclusions, this court's scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether the commission's

findings and conclusions are supported by substantial evidence. *Johnstown–Pittsburgh Express, Inc. v. Public Utility Commission,* 5 Pa.Commonwealth Ct. 521, 291 A.2d 545 (1972).

### 1. Commission Approval of Transfer of Assets of a Public Utility

■ Public Service [1] argues that the transfer of the assets of the three utility companies from Boland to Public Service was lawful because 66 Pa.C.S. § 1102(a)(3) does not mandate that the commission approve applications for certificates of public convenience before transferring such assets.

Section 1102(a)(3) states in relevant part:

(a) General rule. Upon the application of any public utility and *the approval of such application by the commission,* evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, it shall be lawful:

. . . . .

(3) For any public utility or an affiliated interest of a public utility as defined in section 2101 (relating to definition of affiliated interest) ... to acquire from, or to transfer to, any person or corporation, including a municipal corporation, by any method or device whatsoever, including the sale or transfer of stock and including a consolidation, merger, sale or lease, the title to, or the possession or use of, any tangible or intangible property used or useful in the public service.

(Emphasis added.)

1. This court notes that Richard Freeman, the vice president of Public Service, has filed a brief in this case along with counsel for Public Service. Because a corporation must be represented by counsel in any action and cannot represent itself, *Walacavage v. Excell 2000, Inc.,* 331 Pa.Superior Ct. 137, 480 A.2d 281 (1984), this court will not address the arguments in Freeman's brief. This court notes that those arguments are also addressed by counsel for Public Service in a separate brief, to which this court now responds.

Public Service argues that the language of the above section is regulatory rather than prohibitive, and does not state that transfers of assets of public utilities may not occur *before* the commission approves an application for a certificate.

This court disagrees. Subsections 1102(a) and § 1102(a)(3) are prohibitive. They provide only that it is lawful for a public utility to transfer its assets *upon the commission's approval* of a certificate of public convenience for the utility.

In this case, Robert Boland transferred his ownership of the assets to the three water companies to Public Service in 1985. However, because this transfer occurred before Public Service filed its application with the commission for certificates of public convenience, that transfer was unlawful under § 1102(a)(3).

In addition, this court notes that in the December 24, 1991 agreement by which Public Service and Boland sought to effectuate the transfer, both parties agreed that there would be a contract default if Public Service did not, within thirty days from the date of the agreement, obtain approval of the transfer from the commission. Public Service did not file its application until July 16, 1992, and thus defaulted. Also, this court notes that Public Service admitted in a hearing before the commission that it was two-and-one-half months behind on its installment sales agreement with Robert Boland, and that a judgment had been entered against Public Service in the amount of the arrears of $650,000.

Thus, this court concludes that the December 1991 sales agreement between Public Service and Boland is unlawful because § 1102(a)(3) mandates that the department approve applications for certificates of public convenience *before* transferring assets of public utilities.

## 2. *Due Process and Equal Protection*

Public Service argues that the commission violated Public Service's procedural and substantive due process rights, alleging that 1) the commission did not allow full and fair hearings in the application proceedings, 2) the commission commingled

advisory and prosecutorial functions where the commission acted in an advisory and prosecutorial fashion towards Public Service, 3) the administrative law judge received and relied upon ex parte communications (consumer complaints submitted by Wild Acres) in reaching a decision, and 4) the commission abused its discretion by not following its own regulations and procedures requiring that each party in a case be allowed an opportunity to present his case or defense.

Due process requires that a judicial or administrative tribunal provide a hearing where each party in a case has an opportunity to hear the evidence introduced against him, to introduce evidence, and to cross-examine witnesses. *Pennsylvania State Athletic Commission v. Bratton*, 177 Pa.Superior Ct. 598, 112 A.2d 422 (1955).

Public Service apparently argues that it was denied due process under *Bratton* because it did not have an opportunity for a full and fair hearing where the administrative law judge dismissed the case after direct and cross-examination of Public Service's witnesses and did not continue the hearing so that Public Service could conduct cross-examination.

This court notes that the administrative law judge held numerous prehearing conferences on the complaints filed against Public Service's application for certificates of public convenience and also on Public Service's applications. On March 22, 1993, Public Service submitted written statements as direct testimony for its witnesses: 1) a six-page statement for Dan Marchese, Public Service's assistant manager for water operations, 2) a three-page statement for Joseph Karboski, operations manager, 3) a three-page statement of Bernard J. Ostrosky, Public Service's staff engineer, and 4) a twelve-page statement for Richard Freeman, Public Service's vice president. The administrative law judge scheduled a hearing for the case for April 6, 1993.

At the April 6, 1993 hearing, Wild Acres moved to dismiss Public Service's applications. Public Service called Marchese as its first witness. Public Service then called Ostrosky to testify. Ostrosky testified on cross-examination by Wild Acres that Public Service 1) operated its water wellhouses in

violation of certain standards and conditions required by the Department of Environmental Resources (DER), and 2) had been reluctant to act on his recommendations that Public Service eliminate the safety hazards. Ostrosky also testified that, after inspecting the Hickory Water system, he had concluded that water pressure and water level problems existed in that system, and that Hickory needed at least one other well in order to provide adequate service to its customers. (RR. 415a.)

Counsel for all of the parties present at the hearing, the Office of Consumer Advocate, Wild Acres, Public Service, Boland, and Metropolitan Edison, then presented lengthy arguments before the administrative law judge. The judge dismissed Public Service's applications, without prejudice, concluding that the applications lacked necessary signatures.

The judge noted that 52 Pa.Code §§ 1.35, 1.36(e) and 3.551(1)(x)–(xi) require that 1) an applicant sign and transcribe an application for a certificate of public convenience, and 2) that an authorized officer of a corporation applicant personally verify the application. The judge noted that the applications were not signed or verified by Public Service. In addition, the judge noted that the applications were also deficient because the applications contained the notarized signature of Aileen A. Freeman, President of the three water companies, and not of Robert Boland, the lawful certificate holder of the companies, and, where the commission had not approved the transfer of the assets of the companies from Boland to Public Service, the applications required the signature of Boland and not Freeman.

This court notes that Public Service's due process rights were not violated because the administrative law judge properly dismissed the case, without prejudice, because of deficiencies in the applications. This court also notes that Public Service was afforded an opportunity to present its witnesses at the April 6 hearing in addition to presenting its arguments before the judge. Public Service was not entitled to any cross-examination because its opponents had no need to present its witnesses.

The commission, in its November 2, 1993 order, after reviewing the record, affirmed the administrative law judge's decision to dismiss the case without prejudice, and concluded that:

Clearly, application for a certificate of public convenience, *first had and obtained,* are conditions precedent to any lawful operation as a public utility. Consequently, any private contract cannot be performed in derogation of valid statutes. Therefore, it is not reasonable for PSWC to assume that it can, by private contract, usurp the police power of this commission to regulate the rates and service of public utilities in the Commonwealth. (Emphasis in original.)

The commission then ordered Public Service to transfer the assets of the water companies back to Boland, the lawful certificate holder.

This court concludes that the commission did not violate Public Service's due process rights.

Public Service also argues that the commission violated Public Service's right to equal protection under the law by dismissing the applications on the basis of a lack of an authorized signature, while having awarded certificates of public convenience to Boland although Boland's application had lacked the necessary signatures as well.

However, Public Service offered no evidence that the commission accepted Boland's applications for certificates of public convenience without signing or transcribing the application.

### 3. Taking without Just Compensation

■ Public Service contends that the commission's November 2, 1993 order requiring Public Service to transfer the assets of the water companies back to Boland constitutes a taking for which Public Service has not received just compensation, and that this violates the taking clause of the United States and Pennsylvania Constitutions.

Public Service cites *Delaware, L. & W. R. Co. v. Morristown,* 276 U.S. 182, 48 S.Ct. 276, 72 L.Ed. 523 (1928) in

arguing that, the state, under its police power, cannot take and appropriate private property for public use without awarding the owner of the private property just compensation for such appropriation.

This court concludes that a taking did not occur in this case because 1) the commission here did not appropriate private property for public use by ordering a transfer of assets of three water companies back to the lawful owner of the companies where Public Service had not received the required certificates of public convenience *before* the transfer, as required by 66 Pa.C.S. § 1102(a)(3), 2) the transfer of the property was not a government appropriation where Boland, and not the commission was to receive the assets of the companies, and 3) even if the December 24, 1991 agreement between Boland and Public Service had been lawful, Public Service violated the agreement by a) not receiving commission approval within thirty days after the agreement, pursuant to paragraph 9(b)(10) and paragraph 11 of the agreement, and b) indicating in a prehearing conference before the administrative law judge that Public Service was two and one-half months behind on its installment sales agreement with Robert Boland, with a judgement in the amount of $650,000 entered against Public Service.

*4. Timeliness of Commission's November 2, 1993 Order*

■ Public Service asserts that the commission lacked jurisdiction to issue the November 2, 1993 order because the commission failed to rule upon Public Service's exceptions to the administrative law judge's initial decision, within ninety days from the date of the filing of the exceptions on May 17, 1993, pursuant to 66 Pa.C.S. § 332(h).

Section 332(h) states in relevant part:

**Exceptions and appeal procedure.** Any party to a proceeding referred to an administrative law judge under section 331(b) may file exceptions to the decision of the administrative law judge with the commission, in a form and manner and within the time to be prescribed by the commission. The commission shall rule upon such exceptions with-

in 90 days after filing. If no exceptions are filed, the decision shall become final, without further commission action, unless two or more commissioners within 15 days after the decision request that the commission review the decision and make such other order, within 90 days of such request, as it shall determine.

In *West Penn Power Co. v. Public Utility Commission,* 104 Pa.Commonwealth Ct. 21, 521 A.2d 75 (1987), this court concluded that the language in 66 Pa.C.S. § 332(g), the section preceding § 332(h), which states that the administrative law judge "*shall* render a decision within 90 days" (emphasis added) after the record is closed in a case, is directory and not mandatory, and failure of the judge to comply with that time limit did not deprive the commission of its authority to enter an order in the case. This court noted that 1) if a statute directs that something be done and if the thing which is being directed to be done is the essence of what is required by the statute itself, then the requirement is mandatory and 2) where the statute merely directs that certain proceedings be done in a certain manner or time, it is directory. *Id.* at 27, 521 A.2d at 78.

The court reasoned that, although the legislature may fix a time within which litigants must perform ministerial acts, the same does not apply to an adjudicating body, and where a statute fixes a time for an adjudicating body, the language of the statute will be construed as *directory* because the courts cannot punish any of the litigants for the actions of the adjudicator. *Id.*

Thus, in accordance with *West Penn,* this court concludes that the language of § 332(h), that the commission "shall rule upon such exceptions within 90 days after filing," is directory and not mandatory and thus, the commission's November 2, 1993 order was not untimely.

### 5. The Commission's Authority to Impose Fines and Excessiveness of Fines

Public Service argues that 1) the commission lacks constitutional authority and jurisdiction to impose a fine against Public

Service, and 2) the fine which the commission imposed against Public Service for violating the commission November 2, 1993 order, is excessive.

■ Under 66 Pa.C.S. § 3301:

(a) **General rule.** If any public utility, or *any other person or corporation* subject to this part ... shall fail, omit, neglect or refuse to obey, observe, and comply with any regulation *or final direction, requirement, determination or order made by the commission* ... such public utility, person or corporation for such violation, omission, failure, neglect, or refusal, shall forfeit and pay to the Commonwealth a sum not exceeding $1,000, to be recovered by an action of assumpsit instituted in the name of the Commonwealth....

(b) **Continuing offenses.** *Each and every day's continuance* in the violation of any regulation or final direction .. or order of the commission ... *shall be a separate and distinct offense.*

(Emphasis added.)

Thus § 3301 authorizes the commission to impose fines for noncompliance with an order of the commission. Although that fine may not exceed $1000 per day or per violation, under § 3301(b), the commission may charge $1000 per day for each day that the violation continues. *York Telephone & Telegraph Co. v. Public Utility Commission,* 181 Pa.Superior Ct. 11, 121 A.2d 605 (1956).

■ This court may not reduce a fine imposed by the commission if the commission has not violated constitutional rights, committed errors of law, or failed to support any findings of fact by substantial evidence. *Newcomer Trucking, Inc. v. Public Utility Commission,* 109 Pa.Commonwealth Ct. 341, 531 A.2d 85 (1987).

■ In this case the commission's November 2, 1993 order required Public Service to comply with that order within ten days of the order, by 1) transferring the assets of the three water companies back to Boland, 2) providing Boland with

necessary documentation regarding client information. The commission's February 7, 1994 order again asked Public Service to comply with the commission's demands, and fined Public Service in the amount of $66,000 for noncompliance.

As of the date of the February 7, 1994 order, Public Service had failed to comply with the commission's order for *over* sixty-six days. Thus, under § 3301(a) and § 3301(b), the commission was authorized to impose a fine of $66,000 on Public Service.

Thus, this court concludes that the commission's fine is not excessive.

Accordingly, the commission's November 2, 1993 and February 7, 1994 orders are affirmed.

### *ORDER*
(Nos. 2802 C.D. 1993 and 346 C.D. 1994)

NOW, June 30, 1994, the orders of the commission at No. A–210025F003 dated November 2, 1993 and dated February 7, 1994 are affirmed.