**Kenneth L. SCHULZE, P.L.S. and Schulze & Associates, Inc., Petitioners,**

v.

**BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 10, 2001.

Decided March 27, 2002.

Dwight G. Diehl, Bedford, for petitioners.

Steven Wennberg, Harrisburg, for respondent.

Before SMITH–RIBNER, Judge, and KELLEY, Senior Judge,[1] and JIULIANTE, Senior Judge.

1. This case was assigned to Judge Kelley prior to the date when he assumed the status of Senior Judge on January 1, 2002.

KELLEY, Senior Judge.

Kenneth L. Schulze and Schulze & Associates, Inc. (collectively referred to as Schulze) petition for review of an order of the State Registration Board for Professional Engineers, Land Surveyors and Geologists (Board). The Board found that Schulze had violated the Engineer, Land Surveyor and Geologist Registration Law, Act of May 23, 1945, P.L. 913, *as amended,* 63 P.S. §§ 131–158.2 (the Law). We affirm.

The following facts are undisputed by the parties. Kenneth L. Schulze holds a professional land surveyor's license from the Board, and is president and chief executive officer of Schulze & Associates, Inc. of Bedford County, Pennsylvania.

In 1995, Schulze hired Walter R. Hull, P.E. (Hull), a professional engineer licensed in Pennsylvania and Maryland, as the sole professional engineer employed on Schulze's staff. Hull was laid off in 1996, rehired in 1997, and laid off again from March of 1997 through 1998. For the year 1997, Schulze withheld federal income tax and deducted payroll taxes from Hull's

compensation, and issued a W–2 statement.[2] As Hull remained laid off during 1998, no W–2 statement was issued for him for that year. In January of 1999, Hull worked for Schulze on one project, for which Schulze did not deduct payroll taxes, did not withhold federal income tax, and did not issue a W–2.

Schulze maintained phone directory listings for the years 1997 and 1998 under the categories "Engineers—Civil" and "Engineers—Consulting". In March and April of 1999, Schulze performed work in which it used business correspondence, a survey plat, drawing title blocks, and business letterhead in which it referred to itself as "Engineers", "Planners", and "Surveyors".

On June 16, 1999, the Bureau of Professional and Occupational Affairs (Bureau) issued to Schulze a nine count order to show cause alleging violations of the Law. The Bureau charged Schulze, in part relevant to the instant appeal, with offering to practice engineering without having a licensed professional engineer among its directing heads or employees, in violation of Sections 3 and 6 of the Law.[3] Specifically,

2. Although the record is incomplete as to Hull's payroll, withholding, and W–2 status for the years 1995 and 1996, no charges against Schulze for 1995 or 1996 are presently before this Court.

3. Section 3 of the Law reads, in relevant part:
Practice of engineering, land surveying or geology without licensure and registration prohibited
(a) In order to safeguard life, health or property and to promote the general welfare, it is unlawful for any person to practice or to offer to practice engineering in this Commonwealth, unless he is licensed and registered under the laws of this Commonwealth as a professional engineer ...
(b) A person shall be construed to practice or offer to practice engineering ... who practices any branch of the profession of engineering ... or who, by verbal claim, sign, advertisement, letterhead, card, or in any *other* way represents himself to be an engi-

neer ... or through the use of some other title implies that he is an engineer ... or that he is registered under this act; or who holds himself out as able to perform, or who does perform any engineering ... service or work or any other service designated by the practitioner or recognized as engineering ...
63 P.S. § 150.
Section 6 of the Law reads, in relevant part:
Practice by firms and corporations
The practice of engineering ... being the function of an individual or of individuals working in concerted effort, it shall be unlawful for any firm or corporation to engage in such practice, or to offer to practice, or to assume use or advertise any title or description conveying the impression that such firm or corporation is engaged in or is offering to practice such profession, unless the directing heads and employes of such firm or corporation in responsible charge of its activities in the practice of

the Bureau alleged that Schulze's use of the word "engineer" in the examples cited above violated Sections 3 and 6 for those years in which Hull was not an employee under the Law.[4] The Bureau further alleged that Schulze's violations of Sections 3 and 6 constituted a violation of Section 37.81(10)[5] of Title 49 of the Pennsylvania Code, which mandates disciplinary action pursuant to Section 4(g)[6] of the Law.

Schulze thereafter timely filed an answer to the Bureau's rule to show cause, denying the charges therein. On May 17, 2000, the Board held a formal hearing on the charges, accepted testimony and evidence from the parties, and closed the record.

On February 28, 2001, the Board issued an adjudication and order, finding, in part relevant to the instant appeal, that Hull's status as a subcontractor for the work performed by him for Schulze in January of 1999 did not meet the definition of employee under the Law. The Board further concluded that Schulze had violated Sections 3 and 6 of the Law, and was subject to discipline pursuant to Section 4(g) of the

Law and 49 Pa.Code § 37.81(10), and further imposed civil sanctions thereunder. Schulze now petitions this Court for review of the Board's order and adjudication.

■ This Court's scope of review of an order of the Board is limited to determining whether constitutional rights were violated, an error of law was committed, or the necessary findings of fact are not supported by substantial evidence. *Staub v. Department of State, State Registration Board for Professional Engineers, Land Surveyors and Geologists*, 710 A.2d 137 (Pa.Cmwlth.1998), *petitions for allowance of appeal denied*, 556 Pa. 716, 729 A.2d 1133 (1998); 557 Pa. 657, 734 A.2d 863 (1999). Substantial evidence is defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Younkin v. Bureau of Professional and Occupational Affairs*, 774 A.2d 1281 (Pa.Cmwlth.2001).

Schulze presents two issues for our review: whether the Board's order of February 28, 2001, was untimely entered and should therefore be dismissed, and;

---

such profession are licensed and registered in conformity with the requirements of this act, and whose name, seal and signature, along with the date of signature, shall be stamped on all plans, specifications, plats and reports issued by such firm or corporation.

63 P.S. § 153.

4. The Law defines an employee as "an individual who is on payroll and for whom taxes are withheld and Social Security is withheld and matched." Section 2 of the Law, 63 P.S. § 149.

5. Section 37.81(10) reads, in relevant part:

Misconduct.
A ... professional land surveyor ... who is found guilty by the Board of gross negligence, incompetency or misconduct in the practice of ... land surveying ... is subject to disciplinary action under section 4(g) of the act (63 P.S. § 151(g)). Misconduct in

the practice of ... land surveying or geology includes the following:
(10) Violating a provision of the act or this chapter.
49 Pa.Code § 37.81(10).

6. Section 4(g) reads, in relevant part:

General powers of board
The board shall have power—
(g) Suspension and Revocation of Licenses; Registrations and Certificates; Reinstatements.—To suspend or revoke the license and registration of any ... professional land surveyor ... who is found guilty by the board, by a majority vote of all its members, of ... misconduct ... in the practice of land surveying ... Misconduct in the practice of ... land surveying ... shall include ... [the violation of] any provision of this act or any regulation promulgated by the board.
63 P.S. § 151(g).

whether the Board erred in its finding and conclusion that Schulze did not have a licensed engineer in its employ during the applicable time frame.

In support of his first issue, Schulze cites to Section 3(d) of the Act of July 2, 1993, P.L. 345, 63 P.S. § 2203(d),[7] which reads, in relevant part:

Hearing examiners

(d) Time periods.—In all disciplinary matters before a licensing board or commission, hearings shall commence within 90 days after the date on which an answer is filed. Any continuance granted prior to the commencement of the hearing shall toll the 90–day requirement by the period of the continuance. **A decision shall be rendered within 180 days after the record is closed.**

(Emphasis supplied). It is undisputed that the record in the instant case was closed on May 17, 2000, and that the Board's adjudication and order was entered on February 28, 2001, a period that clearly exceeds the above-referenced 180–day limit. Schulze argues the clear and precise language of Section 3(d) of the Act of July 2, 1993, namely the word "shall", mandates the Board's entry of its order in a timely fashion. Schulze further asserts that the Board's failure to follow that mandate merits a dismissal of the rule to show cause brought against it, and further merits a dismissal of the sanctions imposed on Schulze by the Board. We disagree. ·

■ This Court has previously considered statutory sections that facially appear to mandate the timely entry of an order by an administrative adjudicative body, such as Section 3(d) of the Act of July 2, 1993, to determine whether such sections' language is directory or mandatory. In *West*

*Penn Power Co. v. Public Utility Commission,* 104 Pa.Cmwlth. 21, 521 A.2d 75 (1987), we examined a substantively similar statutory section stating that an administrative law judge shall render a decision within 90 days after the record is closed. In concluding that such a time limitation did not deprive the Public Utility Commission of its authority to enter an order after the statutorily fixed period, we wrote:

Whether a statute is mandatory or directory must be determined by considering legislative intent gleaned from review of the entire statute and from considering the nature and object of the statute and the consequences of the construction of it one way or the other. If the thing directed to be done is the essence of the thing required, the statute is mandatory. If, however, the statute merely directs that certain proceedings be done in a certain manner or at a certain time, it is directory. Failure to follow a mandatory statute renders the proceedings void, whereas failure to follow a directory statute does not.

*West Penn Power,* 521 A.2d at 78 (citations omitted). *Accord Moore Nomination Petition,* 447 Pa. 526, 291 A.2d 531 (1972). While the legislature may fix a time certain within which litigants must complete ministerial or procedural acts, such a mandate does not apply to an adjudicating body. *Public Service Water Company v. Pennsylvania Public Utility Commission,* 165 Pa.Cmwlth. 463, 645 A.2d 423, 430 (1994). "[W]here a statute fixes a time for an adjudicating body, the language of the statute will be construed as *directory* because the courts cannot punish any of the litigants for the actions of the adjudicator." *Id.* Therefore, in accordance with our es-

---

**7.** The Act of July 2, 1993, P.L. 345, provides authority for, *inter alia,* hearing examiners in the Bureau, provides additional powers to the Commissioner of Professional and Occupational Affairs, and further provides authority for civil penalties and license suspension.

tablished precedents, we hold that the language at issue in Section 3(d) of the Act of July 2, 1993, is directory, and not mandatory, and that the order of the Board dated February 28, 2001 was not untimely.

Schulze next argues that the Board erred in finding and concluding that Schulze did not employ a licensed engineer during the year 1999.[8] The crux of Schulze's argument is that Hull was an employee during January of 1999, notwithstanding Schulze's conflicting admissions that either Hull was paid for that work, but no taxes were withheld or W–2 filed therefor, or, that Hull was not paid for that work but was still considered an employee. R.R. at 135a–136a; 74a–79a, 82a–83a.

■ The Board found Schulze's testimony that Hull was an unpaid employee in January of 1999 to not be credible, and further found not credible a purported employment agreement between Schulze and Hull that was entered into evidence. R.R. at 164a. The Board found credible a letter from Schulze's attorney to the Bureau admitting that, although Hull was paid for his work for Schulze in January of 1999, Hull was not "acting as an employee such that wage withholding was required", and that Hull was providing services to Schulze in 1999 as a sub-contractor. R.R. at 164a, 135a. It is axiomatic that matters of credibility and evidentiary weight are within the exclusive province of the fact finder below, and are not within our scope of review. *Makris v. Bureau of Professional and Occupational Affairs*, 143 Pa.Cmwlth.

456, 599 A.2d 279 (1991). The letter from Schulze's attorney, found to be credible by the Board and admitting to Hull's absence on Schulze's payroll, and his subcontractor and withholding status, constitutes substantial evidence supporting the Board's findings. *Younkin*.

Further, as noted above, the Law specifically defines an employee to be "an individual who is on payroll and for whom taxes are withheld and Social Security is withheld and matched." Section 2 of the Law, 63 P.S. § 149. In light of the undisputed fact that such conditions were not met by Schulze in relation to Hull in 1999, the Board did not err in concluding that Hull was not an employee under the Law.

Accordingly, the order of the Board is affirmed.

Judge SMITH–RIBNER concurs in result only.

### ORDER

AND NOW, this 27th day of March, 2002, the order of the State Registration Board for Professional Engineers, Land Surveyors and Geologists, dated February 28, 2001, at Docket No. 0413–47–99, is affirmed.

■

---

**8.** Although Schulze's brief also addresses alleged Board errors in finding that Schulze did not employ an engineer in the years 1997, 1998, and 2000, we note that the Board sustained only the counts of the Bureau's rule to show cause for violations in the year 1999, and we therefore restrict our inquiry to that year. *See* Reproduced Record (R.R.) at 163a–165a, 167a.