IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holly Nichole Kabiru,      :
       Petitioner :
            :
   v.       : No. 1452 C.D. 2022
           : Submitted: September 1, 2023
Bureau of Professional and   :
Occupational Affairs, State Board of :
Vehicle Manufacturers, Dealers and :
Salespersons,       :
      Respondent :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE        FILED:  November 21, 2023

   Holly Nichole Kabiru (Petitioner),[1] proceeding pro se, petitions for review of

the Bureau of Professional and Occupational Affairs (Bureau), State Board of

---

[1] The Court notes that the filings have been inconsistent about whether Petitioner was the sole petitioner or whether Exclusive Pre-Owned Motors, LLC (Exclusive) was also a petitioner.  A review of the Petition for Review, filed December 28, 2022, makes clear that Exclusive is *not* a party to this action.  This Court has modified the caption accordingly.  Rule 1513 of the Pennsylvania Rules of Appellate Procedure requires that a petition for review contain, among other things, "the name of the party or person seeking review[.]"  Pa.R.A.P. 1513(d)(2).  The Petition for Review filed with our Prothonotary (Petition for Review) lists "Holly Kabiru" as the Petitioner.  Petition for Review at 1-5.  Moreover, Petitioner initially mailed the Court a handwritten letter stating, "**I wish to appeal** this Final Adjudication and Order" with her signature directly below.  Pro Se Letter Received, *Kabiru v. Bureau of Pro. & Occupational Affs., State Bd. of Vehicle Mfrs., Dealers & Salespersons*, (Pa. Cmwlth., No. 1452 C.D. 2022, Dec. 9. 2022).  In her brief, Petitioner **(Footnote continued on next page…)**

Vehicle Manufacturers, Dealers and Salespersons' (Board) November 28, 2022 final adjudication and order suspending, for six months, Petitioner's vehicle salesperson license and Exclusive's vehicle dealer license and imposing a $6,000 joint civil penalty. Additionally, the Board admits it erred when it sustained Count Three of the Bureau's order to show cause and requests a remand to reconsider the sanctions it imposed thereunder. After careful review, we affirm in part, reverse in part, vacate the imposition of sanctions, and remand.

## I. Background

On July 2, 2021, the Bureau filed an order to show cause against Petitioner and Exclusive, alleging violations of the Pennsylvania Board of Vehicles Act (Act).[2] The alleged violations stemmed from Petitioner's online advertisement and sale of used motor vehicles to Mark Frederick (Frederick) and Amy Ward (Ward), respectively.

A. Frederick Complaint

Frederick's family-owned-and-operated Ohio car dealership has been in business since 1998. Certified Record (C.R.) at 163.[3] Because Frederick "[tries] to keep a reputation of having solid cars" available to his customers, he generally avoids purchasing vehicles with reconstructed titles as well as vehicles sold by other dealerships. *Id.* at 160-61, 163-64. In April 2019, Frederick discovered a 2008 Mercury Mountaineer advertised as "for sale by owner" on the classified advertising website Craigslist. *Id.* at 160. When Frederick contacted the phone number listed on the Craigslist advertisement, Petitioner answered and assured Frederick the

---

advances the same arguments on behalf of Exclusive as she does for herself. Therefore, even if Exclusive had been a party to this action, it would not have impacted the outcome of this case.

[2] Act of December 22, 1983, P.L. 306, *as amended*, 63 P.S. §§ 818.101 – 818.704.

[3] We have assigned page numbers to the certified record for ease of citation. The assigned page numbers correlate to our electronic record.

2

Mercury (i) belonged to her, (ii) had a "clean" title, and (iii) did not have any issues. *Id.* at 162-64. Consequently, Frederick expressed interest in purchasing the Mercury and agreed to meet Petitioner at a Pennsylvania notary services office of her choosing. *Id.* at 165, 176.

Frederick and his youngest son, Bradley (collectively, the Fredericks), traveled from Ohio to Pennsylvania and met Petitioner at a notary's office. *Id.* at 164-67, 176. During this meeting, Bradley inspected and test drove the Mercury, discussed its history[4] and condition with Petitioner, and, ultimately, consummated the deal on behalf of his father's dealership. *Id.* at 182-86. Bradley also observed that the notary staff seemingly "knew [Petitioner] very well" and "let her do everything." *Id.* at 185, 192. Before leaving the notary's office, Bradley noticed that the top of Mercury's title had been folded during the signature process and, after unfolding it, realized the Mercury's vehicle title was classified as reconstructed instead of clean. *See* Reproduced Record (R.R.) at 24-25. Bradley immediately notified his father and tried to find Petitioner; however, she was already gone. C.R. at 185-86. Frederick attempted to contact Petitioner at the phone number he found on Craigslist, but his calls went unanswered. *Id.* at 167-68. Frederick then filed a complaint with the Board.

B.  Ward Complaint

In July 2019, Ward and her father, Mark, (collectively, the Wards) sought to purchase a reliable vehicle for Ward's teenage daughter. *Id.* at 199. Mark, who has since passed away, saw an advertisement on Craigslist for a 2012 Subaru Legacy with a "clean" vehicle title and, together with Ward, initially met Petitioner to inspect the vehicle. *Id.* at 201, 204. Here, Petitioner stated she was selling her Subaru

---

[4] Bradley recounts Petitioner stating "she recently got a *Subaru* and they [didn't] need the [Mercury] anymore." C.R. at 182 (emphasis added).

because "she no longer needed it and it [had] just been sitting around." *Id.* at 205. Ward test drove the Subaru and commented that "it was kind of chugging." *Id.* The Subaru otherwise appeared to be in relatively good condition, so the Wards agreed to pay Petitioner $6,000. *See id.* at 208, 215-18.

Petitioner arranged a second meeting with the Wards at a "Title Department" and, even though she was two hours late, left immediately after completing the signature process. *Id.* at 205, 207-08. Mark quickly recognized the Subaru had a reconstructed title and spotted that Petitioner supplied Exclusive's address—a vehicle dealership—rather than her home address. *Id.* at 208, 212-13, 293-94. The Wards attempted to visit this address; however, they could not find Exclusive or Petitioner there; nor were the Wards able to successfully communicate with Petitioner afterwards via the phone number obtained from Craigslist. *Id.* at 213-14. Mark then filed a complaint with the Board on behalf of Ward.

C. Procedural History

The Department of State (Department) assigned Regulatory Enforcement Investigator Susan Banaszak-Catena (REI Banaszak-Catena) to investigate the complaints. *Id.* at 223. As part of her investigation, REI Banaszak-Catena subpoenaed Craigslist and received advertising records which referenced Petitioner's personal information. R.R. at 55; C.R. at 295-1050. She further acquired copies of the Mercury's title and the Subaru's bill of sale from the complainants, and, in spite of "some trouble getting to meet with [Petitioner] and getting a hold of her[,]" REI Banaszak-Catena secured similar documents from Petitioner as well. *Id.* at 224-29.

A hearing examiner conducted an administrative hearing in February 2022 during which the Fredericks, Ward, REI Banaszak-Catena, and Petitioner each

testified. The Department additionally introduced several exhibits, including a voluminous collection of Craigslist advertisements, without objection. *Id.* at 251. Petitioner was subsequently found to be in violation of the Act, namely Sections 318(2), (6), and (7),[5] and the hearing examiner recommended a $2,000 joint penalty. On June 16, 2022, the Bureau timely submitted a brief on exceptions requesting the Board impose a harsher sanction. Petitioner chose not to file an opposing brief. The Board considered the matter in August 2022 and approved its final adjudication and order on November 28, 2022, assessing a $6,000 joint penalty[6] and levying a six-month suspension on Petitioner's professional license.

Petitioner appeals from this order and now presents two questions for our consideration: (i) whether 63 Pa.C.S. § 3105(d)(4) establishes a "mandatory" or merely "directory" 90-day statutory deadline for the Board to enter final adjudications, and (ii) whether the Board's final adjudication is supported by substantial evidence.

## II. Discussion

A. Section 3105(d)(4) – Directory or Mandatory?

We first address Petitioner's argument that Section 3105(d)(4) is a *mandatory* statutory provision. The parties do not dispute that the Board's final adjudication was untimely rendered about 190 days after the hearing examiner's proposed adjudication. Petitioner contends this delay "blatantly" ignores her due process rights and "shows that Petitioner simply doesn't affect the public interests negatively." R.R. at 14; Petitioner's Reply Br. At 5. Accordingly, Petitioner asks us to view the General Assembly's use of the word "shall" in the statute to mean "must" and, in turn, grant her relief from the Board's final adjudication.

---

[5] 63 P.S. §§ 818.318(2), (6), (7).

[6] The Board charged $1,500 per count sustained (four in total). *See* R.R. at 47.

5

Section 3105(d)(4) provides, in relevant part: "The [Board] *shall* render a **final adjudication** or decision on any exceptions to the decision of a hearing examiner or any applications for review **within 90 days** of the filing of the exceptions or applications[.]"  63 Pa.C.S. § 3105(d)(4) (emphasis added).

When interpreting the language of a statute, our "standard of review is *de novo* and our scope of review is plenary." *In re: Est. of Potocar*, 283 A.3d 936, 941 (Pa. Cmwlth. 2022) (citing *Meyer v. Cmty. Coll. of Beaver Cnty.*, 93 A.3d 806, 813 (Pa. 2014)).  In other words, interpreting a statute and determining its proper meaning involves a "pure question of law" which only the courts can affirmatively resolve. *Dechert LLP v. Commonwealth*, 998 A.2d 575, 579 (Pa. 2010).  As a result, we reassess the record before us with a fresh pair of eyes and do not defer to the Board's prior conclusions about the law in question.  The ultimate goal of our statutory interpretation then is to "ascertain and effectuate the intention of the General Assembly."  1 Pa.C.S. § 1921(a).  A statute's plain language is generally considered "the best indicator of such legislative intent."  *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55 A.3d 1056, 1067-68 (Pa. 2012) (citing *Bd. of Revision of Taxes, City of Phila. v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010)).

To be sure, "[i]t has long been part of the jurisprudence of this Commonwealth that the use of 'shall' in a statute is not always indicative of a mandatory directive; in some instances, it is to be interpreted as merely directory." *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1071 (Pa. 2020).  Indeed, in 1956, our Superior Court established:

> To hold that a provision is directory rather than mandatory, does not mean that it is optional—to be ignored at will.  Both mandatory and directory provisions of the legislature are meant to be followed.  **It is only in the *effect* of non-compliance that a distinction arises.**  A provision is mandatory when failure to follow it renders the

6

> proceedings to which it relates illegal and void; it is directory when the failure to follow it does not invalidate the proceedings.

*Borough of Pleasant Hills v. Carroll*, 125 A.2d 466, 469 (Pa. Super. 1956) (emphasis added).[7]    Nearly four decades later, this Court similarly held that "'shall' has generally been regarded as directory, unless time is of the essence or the statute indicates that the provision is mandatory." *Dep't of Transp., Bureau of Driver Licensing v. Claypool*, 618 A.2d 1231, 1232 (Pa. Cmwlth. 1992) (citing *Commonwealth v. Kowell*, 228 A.2d 50 (Pa. Super. 1967)).

We have also recognized the General Assembly may not "fix a time in which the exercise of a **purely judicial function** must occur and, thus, when a statute appears to do so it will be construed as **directory**." *West Penn Power Co. v. Pa. Pub. Util. Comm'n*, 521 A.2d 75, 78 (Pa. Cmwlth. 1987) (emphasis added); *see JPay, Inc. v. Dep't of Corr.*, 89 A.3d 756, 763 (Pa. Cmwlth. 2014) ("[The Commonwealth Court] is particularly reluctant to find a statutory provision mandatory where it requires that a Commonwealth agency issue an adjudication within a specified time frame[.]").

According to Petitioner, the Board's untimely order is null and void because our General Assembly intentionally drafted a mandatory deadline.  We disagree.  The language of Section 3105(d)(4) does not prima facie invalidate the Board's authority in the event its final adjudication—a "purely judicial function"[8]—exceeds the statute's 90-day deadline.  First, it is well settled that "where a statute fixes a time for an adjudicating body, the language of the statute will be construed as

---

[7] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018) (citing *Donaldson v. Workers' Comp. Appeal Bd. (Pa. Workers' Comp. Sec. Fund)*, 728 A.2d 994, 995 (Pa. Cmwlth. 1999)).

[8] *See In re Objections to Nomination Papers of "Socialist Labor*," 1 A.2d 831, 832 (Pa. 1938).

*directory* because the courts cannot punish any of the litigants for the actions of the adjudicator." *Pub. Serv. Water Co. v. Pa. Pub. Util. Comm'n*, 645 A.2d 423, 430 (Pa. Cmwlth. 1994) (citing *West Penn*, 521 A.2d at 78). We correspondingly determined in *Schulze v. Bureau of Professional and Occupational Affairs*, 794 A.2d 984, 989 (Pa. Cmwlth. 2002), and *Shapiro v. State Board of Accountancy*, 856 A.2d 864, 872 (Pa. Cmwlth. 2004), that Section 3(d) of the Act of July 2, 1993, P.L. 345, *formerly* 63 P.S. § 2203(d), repealed by the Act of July 1, 2020, P.L. 575 (the predecessor to Section 3105(d)(1)),[9] is a directory provision. "When the meaning of a word or phrase is clear when used in one section, it will be construed to mean the same thing in another section of the same statute." *Hous. Auth. of Cnty. of Chester v. Pa. State Civ. Serv. Comm'n*, 730 A.2d 935, 946 (Pa. 1999) (citing *Commonwealth v. Maloney*, 73 A.2d 707, 712 (Pa. 1950)). Section 3105(d)(4) is in *pari materia* with Section 3105(d)(1); therefore, Section 3105(d)(4) is equally directory. *See* 1 Pa.C.S. § 1932. For these reasons, the Board's delay did not prejudice Petitioner; in fact, she actually "benefited from the delay through continuous, unencumbered licensure." Board's Br. at 19.

B. Substantial Evidence

Our review of the Board's decision to issue a civil penalty "is limited to determining whether the Board violated the licensee's constitutional rights, committed an error of law, or based its conclusion on a material finding of fact that was not supported by substantial evidence." *Kerbeck Cadillac Pontiac, Inc. v. State Bd. of Vehicle Mfrs., Dealers & Salespersons*, 854 A.2d 663, 667 (Pa. Cmwlth. 2004) (citing *N. Assocs., Inc. v. State Bd. of Vehicle Mfrs., Dealers and Salespersons*, 725 A.2d 857 (Pa. Cmwlth. 1999)); *see* 2 Pa.C.S. § 704.

---

[9] Repealed by the Act of July 1, 2020, P.L. 575.

8

Substantial evidence is regularly defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Hammad v. Bureau of Pro. & Occupational Affs., State Bd. of Veterinary Med.*, 124 A.3d 374, 380 n.7 (Pa. Cmwlth. 2015). The Board is the ultimate finder of fact and "may determine credibility from the reading of a transcript[;]" ergo, we cannot override the Board's discretion and substitute our own. *Pellizzeri v. Bureau of Pro. & Occupational Affs.*, 856 A.2d 297, 301 (Pa. Cmwlth. 2004). Moreover, the Board may impose sanctions different from those recommended by the hearing examiner. *See, e.g.*, *Telang v. Bureau of Pro. & Occupational Affs.*, 751 A.2d 1147, 1152 (Pa. 2000). We shall affirm the Board's order unless we find the Board abused its discretion, exceeded its authority, and/or misapplied the law. *See Burnworth v. State Bd. of Vehicle Mfrs., Dealers & Salespersons*, 589 A.2d 294, 297 (Pa. Cmwlth. 1991).

At this juncture, Petitioner argues the Board's findings of fact bolstering its final adjudication are "not supported by ample evidence" and are "solely based on speculation" because "the determination of Petitioner's credibility [was] primarily based upon the unapplicable Craigslist ads and hearsay." Petitioner's Reply Br. at 4, 8; R.R. at 12. The Board stipulates in response that the Craigslist advertisements should *not* have been admitted by the hearing examiner because a custodian (or other qualified witness) must give supporting testimony per the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108(b). In any case, the Board now asserts the records were admissible under the *Walker* rule, which provides: "Hearsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of the [b]oard, [i]f it is corroborated by any competent evidence in

the record, but a finding of fact based [s]olely on hearsay will not stand." *Walker v. Unemployment Comp. Bd. of Rev.*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976).

Although Commonwealth agencies enjoy relaxed evidentiary standards, 2 Pa.C.S. § 505, the *Walker* rule makes clear this presumption is not absolute. *See, e.g.*, *A.Y. v. Dep't of Pub. Welfare, Allegheny Cnty. Child. & Youth Servs.*, 641 A.2d 1148, 1151 (Pa. 1994). Thus, we must scrutinize the record and ascertain (i) whether the Craigslist advertisements are hearsay, and (ii) whether the Board's findings of fact are based *solely* on hearsay OR are corroborated by other competent evidence. *See Shapiro*, 856 A.2d at 873.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *See* Pa.R.E. 801(c)(1)-(2). The Department's subpoena of Craigslist's records revealed Petitioner's advertisement for the Subaru; however, REI Banaszak-Catena could not find the advertisement for the Mercury. *Id.* at 232-35. The Craigslist advertisements are hearsay only to the extent they were introduced to prove Petitioner used Craigslist to sell the Subaru. C.R. at 1180-84. Nonetheless, we affirm the Board's findings regarding Craigslist in light of the competent testimony supplied by the Fredericks, Ward, and REI Banaszak-Catena.

From the outset, Petitioner denies ever using Craigslist to advertise and sell vehicles on her own behalf and, in addition, alleges she used the e-commerce website eBay to sell the Mercury. C.R. at 24, 188, 258-63. There is simply no evidence in the record to substantiate these claims. REI Banaszak-Catena prompted Petitioner to supply her own advertising records, but she was unable (or unwilling) to do so. *Id.* at 229-35, 239. Petitioner additionally chose not to object when the Department introduced the subpoenaed Craigslist advertisements. C.R. at 251; *see* Pa.R.E. 103(a)(2).

10

Both Frederick and Ward, on the other hand, attested under oath to using Craigslist, finding Petitioner's phone number on the website, and calling Petitioner at this number before purchasing the Mercury and the Subaru, respectively. C.R. at 160-63, 194, 201, 233. Petitioner acknowledged meeting with the Fredericks and the Wards and selling them the vehicles. *Id.* at 257. At no point during negotiations did Petitioner disclose to the parties her vehicle salesperson license or the fact that she owned a vehicle dealership—despite advertising under Craigslist's "for sale by owner" category. *Id.* at 190-91, 206, 213. Significantly, the record reveals Petitioner embellished that she (i) "had two vehicles and that [the Mercury] was bigger and just didn't suit for what they need[ed] it for," (ii) "recently got a Subaru and they [didn't] need the [Mercury] anymore," and (iii) "had [the] Subaru for sale because she no longer needed it and it [had] just been sitting around." *Id.* at 163, 182, 205. We further note one of the subpoenaed advertisements says, "Selling because it's a second car and not needed anymore." *Id.* at 311, 1176-80. This is *exactly* what Petitioner told the Fredericks and the Wards. *Id.* at 163, 182, 205-06. Furthermore, the address included with Petitioner's Petition for Review is the *same* address located on the subpoenaed Craigslist advertisements. *Id.* at 296-1299. For these reasons, substantial evidence supports the hearing examiner's conclusion that Petitioner "is simply not credible" regarding her use of Craigslist, R.R. at 56, and we accordingly hold the Board did not abuse its discretion when it referred to these facts.

Irrespective of the Craigslist advertisements, the hearing examiner found Petitioner "was evasive and glib at [the] hearing," "successfully hoodwinked" the Fredericks and the Wards, is a "less than conscientious used car salesperson," and altogether failed to rebut the case against her. *Id.* at 56-58. Petitioner (i) concealed

11

the fact that the vehicles had reconstructed titles, C.R. at 186, 253-64, (ii) provided REI Banaszak-Catena with an altered bill of sale for the Subaru, *id.* at 236-37, 243-46, R.R. at 22-23, Supplemental Reproduced Record at 9b, and (iii) never asked the parties to meet her at Exclusive; instead, the Fredericks and the Wards were always directed to meet at locations in close proximity of Exclusive.  C.R. at 164, 205, 257. Petitioner also failed to explain why or how someone else would post public advertisements on Craigslist using her phone number, email address, and home address. *Id.* at 258-63.  The Fredericks and the Wards believed Petitioner was selling the vehicles privately—not on behalf of Exclusive—and they justifiably relied upon Petitioner's Craigslist advertisements as well as her subsequent statements during negotiations in deciding to purchase the vehicles.

Assuredly, a reasonable mind could conclude the evidence in the record adequately supports the Board's conclusion; therefore, we hold substantial evidence supports the Board's findings of fact.

C.  Order to Show Cause

Count Three of the Bureau's order to show cause states: "Respondent violated Section 318(7) of the Act . . . **by and through 37 Pa. Code § 301.4(3)** [sic] in that Respondent failed to include [within] the sales contract a description of the vehicle[,] specifically that it had been reconstructed" (emphasis added).[10]  C.R. at 11.  The Department articulated to the hearing examiner that this was an incorrect legal citation.  *Id.* at 144.  Nevertheless, the hearing examiner and the Board sustained Count Three in their respective adjudications "without a factual finding to support a violation of [Section 301.4(a)(3)]."  Board's Br. at 9.  The Board now concedes in its brief that "[t]here is no additional evidence in the record to support a violation of

_____

[10] The Board avers 37 Pa. Code § 301.4(a)(2)(iii) "may have been a more appropriate charge." Board's Br. at 9.

12

[Section 301.4(a)(3)]" and, as a result, asks the Court to remand so it may reconsider its sanction imposed under Count Three (a $1,500 civil penalty).

### III. Conclusion

Based on the foregoing, we affirm the Board's final adjudication in part. We reverse the portion of the Board's final adjudication concluding Petitioner violated 37 Pa. Code § 301.4(a)(3). Consistent with the Board's request, we vacate the sanction imposed pursuant to Count Three of the Board's order to show cause and remand to allow reconsideration of the sanction.

_____

STACY WALLACE, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holly Nichole Kabiru,                        :
                              Petitioner     :
                                             :
        v.                                   : No. 1452 C.D. 2022
                                             :
Bureau of Professional and                   :
Occupational Affairs, State Board of         :
Vehicle Manufacturers, Dealers and           :
Salespersons,                                :
                              Respondent :

# O R D E R

**AND NOW**, this 21st day of November 2023, the November 28, 2022 final adjudication of the Bureau of Professional and Occupational Affairs (Bureau), State Board of Vehicle Manufacturers, Dealers and Salespersons (Board) is **AFFIRMED** in part. The portion of the Board's final adjudication sustaining Count Three of the Bureau's order to show cause is **REVERSED**, and the $1,500 civil penalty imposed thereunder is **VACATED**. This matter is **REMANDED** only to the extent that the Board shall reconsider Count Three consistent with the foregoing opinion and enter a new order within 30 days from which an appeal may be taken.

Jurisdiction relinquished.

_____
STACY WALLACE, Judge