**JPAY, INC., Petitioner**

v.

**DEPARTMENT OF CORRECTIONS and Governor's Office of Administration, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2013.

Decided April 8, 2014.

William W. Warren, Jr., Harrisburg, for petitioner.

P. Oliver Kerwin, Assistant Counsel, Harrisburg, for respondents.

BEFORE: SIMPSON, Judge, and COVEY, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

JPay, Inc. (JPay) petitions for review of an order of the Governor's Office of Administration (OA) dismissing JPay's protest of the selection of Global Tel*Link (GTL) for contract negotiations pursuant to Request for Proposals # 6100021729 (2012 RFP). In its protest, JPay argued that OA's selection of GTL was made without adequate justification and violated a previous contract between JPay and the Department of Corrections (DOC) covering similar services. For the reasons that follow, we affirm.

On December 11, 2008, DOC issued Request for Proposals # 08–IGWF–80 (2008 RFP) for vendors to provide products that could handle incoming inmate email and electronic funds transfers (EFT) at DOC facilities. (2008 RFP §§ I–1, I–4, IV–1, IV–5, Reproduced Record (R.R.) at 7a, 28a, 39a.) In addition to these "established services," DOC also sought proposals for related services to be provided "under one umbrella" of a money order lock box service tied into the EFT system and an "inmate release card program" to eliminate the necessity of giving inmates paper checks upon release. (Id. § I–4, R.R. at 7a.)

The 2008 RFP also provided that a "[s]ingle kiosk is required for all inmate related applications," and that the offering parties must propose a kiosk system and also be prepared to use DOC or third-party kiosks for other inmate related applications. (Id. §§ IV–4.B.1.a, IV–4.B.2, R.R. at 31a, 35a.) DOC clarified these requirements in a question-and-answer document incorporated as an addendum to the 2008 RFP, stating that the "kiosk feature is a future enhancement to the [2008] RFP, specifically outgoing email," that the "costs for outgoing email will be negotiated at a later date," and that, in the future, "it may be required for the vendor to 'share' a kiosk with other inmate related applications (i.e. commissary)." (Jan. 21, 2009 Questions and Answers ¶ 35, R.R. at 61a.) The question-and-answer document further provided that DOC envisioned a "centralized solution with the use of a kiosk to allow inmates to select/access web-based

applications from a menu of available options (including email)" but that this "would be negotiated when outgoing email is addressed at a later date." (*Id.* ¶ 56, R.R. at 63a.)

DOC selected JPay as the successful offeror on the 2008 RFP and on March 1, 2010, a contract was executed between the two parties with a term of May 1, 2010 to April 30, 2015 (2010 Contract). The 2010 Contract provided that JPay would provide the following services:

[1] Inmate Electronic Funds Transfer service to include ALL electronic funding of inmates' accounts.

[2] Money Order Lock Box to include ALL money orders received for PA DOC inmates to be included in the daily deposit file.

[3] Incoming Inmate Email for ALL PA DOC inmates housed at any State Correctional Institution. Only incoming email is being implemented at this time.

(2010 Contract Specified Services, R.R. at 66a.) The 2010 Contract listed the "following optional services proposed in the contractor response to the [2008] RFP [that] are not included as part of the contract": "Outgoing Inmate Email services" and "Kiosks that would provide additional services." (*Id.*) The 2010 Contract further provided that DOC reserved the right to issue change orders at any time during the term of the contract to increase or decrease the quantities of products ordered or "to make changes to the services within the scope of the [2010] Contract." (*Id.* Terms and Conditions § 29, R.R. at 80a.)

On July 25, 2012, OA issued the 2012 RFP on behalf of DOC seeking "to procure services to design, install and implement a turnkey kiosk-like system [ ] that will provide the opportunity for institutionalized offenders to obtain a variety of offender services through a secure, offeror hosted and managed kiosk system" and the provision of secure MP3/media player devices to be offered for sale to inmates. (2012 RFP § I–4, R.R. at 98a.) In addition to allowing inmates to perform such tasks as placing commissary orders, downloading digital media and checking phone time, the 2012 RFP also required that the kiosks would allow inmates to "[a]ccess incoming email and send outgoing email." (*Id.* § IV–3.C.a, R.R. at 118a.). The 2012 RFP also provided that the kiosks would have the capability to allow visitors and the public to make monetary deposits to inmate accounts. (*Id.* § IV–3.C.b, R.R. at 118a.). In a question-and-answer document incorporated as an addendum to the 2012 RFP, OA indicated that a vendor that had not yet implemented a kiosk commissary system would still be able to submit an offer, and that the vendor selected would not be the exclusive EFT provider but would instead have to integrate the kiosk services with the existing EFT service supplier. (Aug. 15, 2012 Questions and Answers ¶¶ 3, 27, R.R. at 256a, 258a, 261a, 263a.)

The 2012 RFP required that each proposal contain an appendix detailing the offeror's prior experience on at least three prior projects with "at least one (1) project where your firm has implemented a project of similar size and scope and one (1) project you have completed that is related to Kiosk like solutions." (2012 RFP § II–4, R.R. at 108a.) The offeror was required to include client references for each project, and to "provide examples [of] prior experience in providing MP3 players, downloadable digital entertainment (music), communication (email) and information through kiosks designed for a correctional environment" with examples and references related to the provision of those services within the previous five years. (*Id.*)

The 2012 RFP further stated that the only two mandatory requirements were that each proposal was timely received by OA and properly signed by the offeror. (*Id.* § III–1, R.R. at 112a.) The 2012 RFP provided that:

> The two (2) Mandatory Responsiveness Requirements set forth in **Section III–1** above (A–B) are the only RFP requirements that the Commonwealth will consider to be *non-waivable*. The Issuing Office reserves the right, in its sole discretion, to (1) waive any other technical or immaterial nonconformities in an Offeror's proposal, (2) allow the Offeror to cure the nonconformity, or (3) consider the nonconformity in scoring of the Offeror's proposal.

(*Id.* § III–2, R.R. at 112a) (emphasis in original.)

On August 30, 2012, JPay, GTL, and a third company, Keefe Group, submitted proposals pursuant to the 2012 RFP. (Apr. 4, 2013 Determination of Agency Head Designee (Determination) Finding of Fact (F.F.) ¶¶ 19–20, R.R. at 604a.) JPay and GTL were requested to submit, and did submit, best and final offers. (*Id.* ¶¶ 24–25, R.R. at 604a.) GTL received the highest overall score[1] and was selected for contract negotiations pursuant to the 2012 RFP. (*Id.* ¶¶ 27–28, R.R. at 604a.) OA notified JPay by letter dated January 25, 2013 that GTL was selected for contract negotiations. (*Id.* ¶ 30, R.R. at 604a.)

JPay filed its protest on February 1, 2013, raising three issues: (i) the 2012 RFP interferes with JPay's exclusive right under the 2010 Contract to provide incoming email and EFT services at DOC institutions; (ii) DOC violated an obligation to negotiate in good faith with JPay for the optional services under the 2010 Contract that were made part of the 2012 RFP; and (iii) the selection of GTL for negotiation pursuant to the 2012 RFP was made without adequate justification. (R.R. at 274a–279a.)

Tony Encinias, OA's Chief Information Officer (Contracting Officer), submitted a response to the Protest on February 19, 2013. In the response, the Contracting Officer stated that GTL satisfactorily demonstrated its prior experience by submitting ten references which demonstrated that GTL was in the process of implementing a similar kiosk system in South Carolina correctional facilities and was planning to install such a system in Kentucky by the end of 2013. (Feb. 19, 2013 Contracting Officer Response to Protest at 8, R.R. at 362a.) JPay submitted a reply challenging these assertions, claiming instead that the South Carolina system was in the process of being installed but would not have email or MP3 capabilities at the outset and that the Kentucky system had in fact been cancelled without issuance of an award. (Mar. 1, 2013 JPay Reply at 3, R.R. at 584a.) JPay requested documents and information relating to GTL's references on three occasions; OA denied

---

1. The scores after the best and final offer phase were:

| Offeror | Technical Score | Small Diverse Business Score | Price Score | Domestic Workforce Bonus | Overall Score |
|---|---|---|---|---|---|
| GTL | 500 | 100 | 300 | 30 | 930 |
| JPay | 475.42 | 47.39 | 158.14 | 30 | 710.95 |
| Keefe Group | 270.07 | n/a | n/a | n/a | n/a |

(Determination F.F. ¶ 26, R.R. at 604a.)

JPay's requests. (Feb. 22, 2013 JPay Letter, R.R. at 579a; Mar. 1, 2013 JPay Reply at 4–5, R.R. at 585a–586a; Mar. 13, 2013 JPay Letter at 2, R.R. at 595a; Feb. 25, 2013 OA Letter, R.R. at 581a.)

On April 4, 2013, John Clark, Special Assistant to the Secretary of Administration in OA, acting as designee on behalf of the Department of Corrections (Designee), issued the Determination denying JPay's protest. The Designee concluded that JPay's first two grounds for protest were untimely because JPay was aggrieved when the 2012 RFP was issued and did not submit its protest within seven days of that date. (Determination Discussion at 8–10, 13–14, R.R. at 607a–609a, 612a–613a.) The Designee also addressed the merits of the first issue and second issue. On the first issue, the Designee concluded that the 2012 RFP did not interfere with JPay's rights under the 2010 Contract because the 2010 Contract was not exclusive and could be altered or terminated by the DOC; the services entrusted to JPay under the 2010 Contract were not supplanted by the 2012 RFP; and a protest is not a proper method for asserting a breach of contract claim and instead JPay should have pursed a remedy with the Board of Claims. (Id. at 10–13, R.R. at 609a–612a.) On the merits of the second issue, the Designee concluded that JPay could not exercise a right to negotiate with regard to the optional services under the 2010 Contract and had no expectation that it would be awarded a contract for the optional services. (Id. at 14, R.R. at 613a.)

The Designee also rejected JPay's third grounds for protest regarding GTL's selection for contract negotiation under the 2012 RFP. The Designee held that GTL met the only two mandatory requirements for the 2012 RFP and that OA was entitled to waive any other requirements. (Id. at 14–17, R.R. at 613a–616a.) Furthermore, the Designee concluded that GTL had, strictly speaking, met the requirement regarding the submission of references. (Id. at 15, R.R. at 614a.)

The Designee also determined that JPay was not entitled to discovery of GTL's references relating to the South Carolina and Kentucky projects because (i) JPay only had a right to review documents that were deemed necessary to render the Determination by the Designee, and the Designee had not reviewed GTL's references; (ii) the Designee's role was only to ensure that proper procedures were followed; (iii) the Contracting Officer averred that GTL's references were received and reviewed; and (iv) the Contracting Officer has the benefit of a presumption of regularity. (Id. at 8, R.R. at 607a.) The Determination was issued on April 4, 2013, two days after the 60 days provided for its issuance by the Procurement Code. 62 Pa. C.S. § 1711.1(f).

■ On appeal to this Court,[2] we initially address two arguments made by JPay asserting that the Designee violated the Procurement Code by (i) failing to provide JPay with documents and information submitted by GTL in its proposal and (ii) issuing the Determination two days after the 60 days provided. First, JPay argues that it was entitled to discovery of the ten references submitted by GTL with its 2012 RFP proposal regarding its experience in similar projects and cited by the Contracting Officer in its response to JPay's protest.

---

2. This Court's scope of review of the Determination is limited to a consideration of whether the determination of the purchasing agency is arbitrary and capricious, an abuse of discretion or contrary to law. 62 Pa.C.S. § 1711.1(i); *Pepco Energy Services, Inc. v. Department of General Services*, 49 A.3d 488, 491 n. 3 (Pa.Cmwlth.2012).

In correspondence with the Contracting Officer and the Designee below and in arguments to this Court, JPay asserts that it was entitled to the documents pursuant to Section 1711.1(*d*) of the Procurement Code, 62 Pa.C.S. § 1711.1(d), because OA's reliance on these documents in its response to JPay's protest signaled that it deemed these documents relevant to the protest. Section 1711.1(d) provides that:

> Within 15 days of receipt of a protest, the contracting officer may submit to the head of the purchasing agency and the protestant a response to the protest, including any documents or information he deems relevant to the protest.

*Id.* The Designee ruled in the Determination, however, relying on Section 1711.1(*e*), 62 Pa.C.S. § 1711.1(e), that the references were not relevant to his review of the procedure and thus JPay was not entitled to their discovery. Section 1711.1(e) provides that:

> The head of the purchasing agency or his designee shall review the protest and any response or reply and may request and review such additional documents or information he deems necessary to render a decision and may, at his sole discretion, conduct a hearing. *The head of the purchasing agency or his designee shall provide to the protestant and the contracting officer a reasonable opportunity to review and address any additional documents or information deemed necessary by the head of the purchasing agency or his designee to render a decision.*

*Id.* (emphasis added).

JPay contends that the Designee erred in analyzing the question of whether JPay was entitled to the references under Subsection (e) of Section 1711.1 instead of Subsection (d); in JPay's view, both subsections provide the right to discovery depending on whether it was the contracting officer who made the determination that the documents were relevant to the protest in the case of Subsection (d), or the head of the purchasing agency or his designee who made the determination of relevancy in the case of Subsection (e).

Subsection (d) does not, however, provide a protestant with an opportunity to discover documents but rather only provides that the contracting officer may submit a response to the protest and documents to support the response. JPay has not cited any authority which supports its argument that a contracting officer is required to provide the protestant with any documents discussed in the response; moreover, the only case which JPay cites relates to the consequences under Subsection (e) of the failure of the head of the purchasing agency or his designee to turn over documents relied upon in his review to the protestant. *See Integrated Biometric Technology, LLC v. Department of General Services,* 22 A.3d 303 (Pa.Cmwlth. 2011). In contrast with the clear language of Subsection (e) providing protestant "a reasonable opportunity to review and address any additional documents or information deemed necessary by the head of the purchasing agency or his designee to render a decision," we must conclude that the General Assembly did not intend that Subsection (d) would provide a protesting party with a right to review documents cited by the contracting officer in his response to the protest. As the Designee did not cite GTL's references among the documents requiring review in order to render the Determination, (Determination at 7, R.R. at 606a), JPay was not entitled to review these documents pursuant to Subsection (e).

■ JPay next argues that because the Designee issued the Determination outside the 60–day period provided in the Procurement Code, this Court should disregard

the Designee's reasoning set forth in the Final Determination. The Procurement Code provides that "[t]he determination shall be issued within 60 days of the receipt of the protest unless extended by consent of the head of the purchasing agency or his designee and the protestant." 62 Pa.C.S. § 1711.1(f). It is undisputed that the Determination was issued 62 days after the submission of the protest and that the Designee did not request an extension with JPay.

■ JPay essentially argues that the direction in Section 1711.1(f) that the head of the purchasing agency or his designee "shall" issue the determination within 60 days was mandatory rather than directory. While both mandatory and directory provisions of the legislature are meant to be followed, the difference between a mandatory and directory provision is the consequence for noncompliance: a failure to strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved. *Fishkin v. Hi-Acres, Inc.*, 462 Pa. 309, 317 n. 5, 341 A.2d 95, 98 n. 5 (1975); *Department of Transportation, Bureau of Driver Licensing v. Claypool*, 152 Pa.Cmwlth. 332, 618 A.2d 1231, 1232–33 (1992).

■ Whether a statute is mandatory or directory "must be determined by considering legislative intent gleaned from review of the entire statute and from considering the nature and object of the statute and the consequences of the construction of it one way or the other." *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 104 Pa.Cmwlth. 21, 521 A.2d 75, 78 (1987). Generally, a statute requiring a public official to take action within a specific time frame is directory unless the statute indicates it is mandatory or time is of the essence for the action that the statute requires. *In re Sale of Real Estate by Lackawanna County Tax Claim Bureau,*

22 A.3d 308, 314 (Pa.Cmwlth.2011); *Claypool*, 618 A.2d at 1232.

■ Here, the Procurement Code does not dictate any sanction or consequence based upon the failure of the purchasing agency head or his designee's failure to issue a determination within 60 days. Nor is there any indication that time is of the essence for the issuance of a determination or that the legislative intent of the Procurement Code would mandate that the 60–day requirement be mandatory. Indeed, JPay did not face any prejudice from the late issuance of the Determination here as the delay was minimal and an award of a contract was stayed pending the resolution of the protest. (Feb. 15, 2013 Designee Letter, R.R. at 353a.) Moreover, this Court is particularly reluctant to find a statutory provision mandatory where it requires that a Commonwealth agency issue an adjudication within a specified time frame. *See, e.g., Shapiro v. State Board of Accountancy*, 856 A.2d 864, 872 (Pa.Cmwlth.2004); *Schulze v. Bureau of Professional and Occupational Affairs*, 794 A.2d 984, 987–89 (Pa.Cmwlth.2002); *Snyder v. State Ethics Commission*, 686 A.2d 843, 852 (Pa.Cmwlth.1996); *Baker v. Department of Public Welfare*, 138 Pa. Cmwlth. 607, 588 A.2d 1337, 1340 (1991); *West Penn Power*, 521 A.2d at 78. Accordingly, we hold that the Designee's failure to issue the determination within 60 days pursuant to Section 1711.1(f) does not invalidate the Determination.

■ We next address whether the Designee properly concluded that the protest was untimely as to JPay's first two grounds. JPay argues that it was not the issuance of the 2012 RFP that gave rise to its protest because DOC did not violate its obligation to negotiate for the optional services or JPay's exclusive rights under the 2010 Contract merely by issuing the 2012

RFP. Rather, JPay contends that it was only the selection of GTL for negotiation pursuant to the 2012 RFP that foreclosed DOC's ability to honor its obligations under the 2010 Contract. JPay argues that the protest was timely filed on February 1, 2013 within seven days of the date OA informed JPay that GTL had been selected on January 25, 2013. We disagree, however, and conclude that JPay's first two grounds for protest were untimely.

Under the Procurement Code, protests are required to be filed:

> within seven days after the aggrieved bidder or offeror or prospective contractor knew or should have known of the facts giving rise to the protest except that in no event may a protest be filed later than seven days after the date the contract was awarded.

62 Pa.C.S. § 1711.1(b). The head of the purchasing agency is authorized to disregard any protest filed more than seven days after the date the protestant was aware of the relevant facts. *Id.*

In its first ground for protest, JPay alleged that the 2012 RFP interfered with JPay's exclusive rights under the 2010 Contract to provide incoming email and EFT services at DOC facilities. The services that JPay asserts overlapped with the 2010 Contract and caused JPay to be aggrieved, however, were clearly set forth in the 2012 RFP: the provision of kiosks with the capability to handle incoming and outgoing inmate email and EFT deposits from the visitors and the public. JPay has not pointed to any facts that it became aware of after the date of the issuance of the 2012 RFP that would have changed its conclusion that the 2012 RFP violated the 2010 Contract. Indeed, OA did not make any amendments to the 2012 RFP through the date which JPay and GTL submitted their final proposals. Thus, though JPay could not have known that OA would select another party for negotiation at the time it submitted its proposal, this does not change the fact that JPay "knew . . . of the facts giving rise to the protest," 62 Pa.C.S. § 1711.1(b), when it submitted its proposal.

JPay similarly knew the facts relating to its second ground for protest before it submitted its proposal. In its second issue, JPay contended that DOC did not satisfy its obligation to negotiate in good faith for the "optional services" of outgoing inmate email and the provision of kiosks under the 2010 Contract, which overlap with services included in the 2012 RFP. Here, also, JPay was aware at the time the 2012 RFP was issued that OA was soliciting proposals on behalf of DOC on the same subject matter of the 2010 Contract. Thus, JPay was aggrieved at the time when the 2012 RFP was issued and it became aware that another party could be selected pursuant to the 2012 RFP; the selection of GTL did not alter this fact.

The conclusion that the first two grounds for protest was untimely is consistent with the decisions of this Court holding that a party is not permitted by the Procurement Code to delay a protest until an award is made on an offering document if the relevant facts are known at the time of issuance. In *Scientific Games International, Inc. v. Governor's Office of Administration*, 78 A.3d 714 (Pa.Cmwlth.2013), the winning offeror on the RFP at issue was the incumbent vendor of a central computer system for the Department of Revenue, but the losing offeror and party bringing the protest had been selected for negotiation following a RFP two years prior, which had been cancelled after the award. *Id.* at 716. The protestant argued in its protest, which was filed shortly after the winning offeror's selection for negotiation, that the award to the winning offeror was improper because (i) the protestant

had a pending claim before the Board of Claims relating to the cancellation of the prior RFP; (ii) the winning offeror had an unfair advantage because it had access to the protestant's bid in the cancelled RFP; and (iii) the winning offeror was improperly awarded incumbency points because it had become the existing vendor under a no-bid contract. *Id.* at 717. We held each of these grounds should have been asserted within seven days of the issuance of the RFP rather than the selection for contract negotiations, concluding that it was the issuance of the RFP at issue "and the potential award of a new contract" that aggrieved the protestant and the protestant "knew or should have known at the time it submitted its proposal to the [challenged] RFP that a contract for the new [service] could be awarded to a different party." *Id.* at 718–19; *see also Collinson, Inc. v. Department of Transportation,* 959 A.2d 480, 482–84 (Pa.Cmwlth.2008) (holding that protest alleging that work items were incorrectly classified in advertisement for bids was untimely after bid was rejected and should instead have been brought within seven days of the project being advertised); *Cummins v. Department of Transportation,* 877 A.2d 550, 553–55 (Pa.Cmwlth.2005) (same); *Common Sense Adoption Services v. Department of Public Welfare,* 799 A.2d 225, 231 (Pa.Cmwlth.2002) (holding that protest alleging the improper consideration of information in audit report incorporated as amendment to RFP was untimely after the selection of party for contract negotiations and should instead have been brought within seven days of the protestant's receipt of the amended material).

JPay argues that the recent decision of *Omnicare, Inc. v. Department of Public Welfare,* 68 A.3d 20 (Pa.Cmwlth.2013), in which this Court reversed a finding of the Department of Public Welfare (DPW) that a protest was untimely, supports its argument here. In *Omnicare,* the protestant, an incumbent pharmaceutical vendor to DPW, brought its protest within seven days of when the contract with the party selected by DPW was posted online, alleging that DPW failed to consider the pricing of certain non-compensable medications as part of the proposals. *Id.* at 23. DPW found the protest untimely because it should have been brought within seven days of the issuance of the RFP. *Id.* The basis for our reversal was that it was not clear in the RFP that the non-compensable medication was included and the protestant only definitively became aware of this fact when the contract with the winning party was posted online. *Id.* at 24–26. Here, by contrast, there were no ambiguities in the 2012 RFP, but rather any basis for JPay to assert that it contravened DOC's obligations under the 2010 Contract was evident to JPay when the 2012 RFP was issued.

Accordingly, we conclude that JPay knew all of the salient facts giving rise to its first two grounds for protest at the latest when it submitted its proposal on August 30, 2012. Because we hold that JPay's protest was untimely as to the first two grounds, we do not reach the Designee's alternate reasons for denying the protest on the first and second grounds on the merits.

█ JPay's third ground for protest was that the decision to select GTL for contract negotiations under the 2012 RFP was not adequately justified. JPay alleges that, based upon information it has uncovered outside the RFP process, GTL provided inaccurate information in its submission and therefore could not have met the minimum technical requirements outlined in the 2012 RFP or earned the highest technical score. This argument does not

turn upon the provisions of the 2010 Contract and therefore was not untimely.

In his response to the protest, the Contracting Officer indicated that GTL submitted ten references showing experience in "a wide range of projects in correctional settings" including "its 'In–Pod' kiosk system [that] is currently being installed in the South Carolina Department of Corrections and will be installed in the Kentucky Department of Corrections later this year." (Feb. 19, 2013 Contracting Officer Response to Protest at 8, R.R. at 362a.) The Contracting Officer further indicated that both the South Carolina and Kentucky systems would also potentially implement GTL's media platform at a later date. (Id.) The Contracting Officer also stated that "GTL addressed the referenced [2012] RFP requirements and certainly did not provide a deficient proposal that would justify the Commonwealth removing GTL from consideration for contract award as JPay suggests." (Id.)

JPay asserts that GTL's proposal was inaccurate and thus incorrectly scored because: (i) GTL did not have any experience in providing MP3 or other media devices or tablet computers in a similar correctional environment; (ii) GTL was at most in the process of installing its kiosk system in South Carolina and had not yet begun operation; (iii) the South Carolina system did not include MP3 or other media devices and email functionality was only contemplated as a future upgrade; and (iv) the Kentucky RFP for which GTL was selected was cancelled and a new RFP was issued without an award at the time of the protest. JPay argues that the alleged non-conformities relating to GTL's experience were so significant to be material to GTL's proposal and were thus non-waivable. JPay further contends that there is no evidence that OA asked GTL to cure the non-conformity and that GTL could not possibly have scored higher than JPay if the non-conformity was taken into account. Finally, JPay argues that OA should have conducted an inquiry into the veracity of the reports submitted by GTL regarding its experience and taken OA's alleged misrepresentations into account in the technical scoring.

It is well-settled that specifications in an RFP are generally mandatory and must be strictly followed. *Dragani v. Borough of Ambler*, 37 A.3d 27, 31 (Pa. Cmwlth.2012); *Dunbar v. Downingtown Area School District*, 901 A.2d 1120, 1126 (Pa.Cmwlth.2006). Nonetheless, agencies are still accorded deference in their decision making when confronted with a non-compliant submission to an RFP. *Gaeta v. Ridley School District*, 567 Pa. 500, 508, 788 A.2d 363, 367 (2002). Thus, where the requirements in an RFP are not mandated by statute and the RFP reserves the right to waive defects, a non-compliant submission may be waived, accepted or cured if: (i) the effect of the waiver will not deprive the agency of the assurance that the contract will be entered into and performed; and (ii) the waiver will not confer a competitive advantage on the offeror over other offerors. *Id.* at 508, 788 A.2d at 367–68; *Dragani*, 37 A.3d at 32; *Cardiac Science, Inc. v. Department of General Services*, 808 A.2d 1029, 1034 (Pa.Cmwlth.2002).

The Designee held that the requirement in the 2012 RFP that offerors submit information related to their prior experience was not mandatory and OA was therefore authorized to either waive this requirement or consider it in the scoring. Even assuming JPay's allegations regarding GTL's experience are true, we agree with the Designee's conclusion. The text of the 2012 RFP was clear that there were only two mandatory requirements—the timeliness of receipt of the proposal and signature of the offeror on the proposal—and

that OA could waive any other non-conformity, allow the offeror to cure or consider the non-conformity in the scoring. While the 2012 RFP provides that offerors "must" submit information related to their experience on prior projects, a requirement phrased in the imperative does not necessarily make the requirement mandatory. *Gaeta*, 567 Pa. at 509, 788 A.2d at 368; *Language Line Services, Inc. v. Department of General Services*, 991 A.2d 383, 390 (Pa.Cmwlth.2010). The non-conformity alleged by JPay with respect to GTL's purported lack of experience with similar projects does not rise to the level that it would deprive OA of the assurance that GTL would perform on a contract with DOC or give GTL a competitive advantage over the other offerors on the 2012 RFP. *See Language Line Services*, 991 A.2d at 390.

JPay further argues that the Designee should have held a hearing to determine whether its allegations regarding GTL's deficient submission were true. The Procurement Code, however, provides that it is within the sole discretion of the Designee to hold a hearing. 62 Pa.C.S. § 1711.1(e); *see also Durkee Lumber Co., Inc. v. Department of Conservation and Natural Resources*, 903 A.2d 593, 598–99 (Pa.Cmwlth.2006) (holding that a disappointed offeror's due process rights are not violated by the absence of a hearing because the offeror has no right to have a government contract awarded to it). The Designee noted in the Determination that the prior experience requirements were not minimum requirements but rather could be waived or considered in the scoring. As there was no evidence that any non-conformity, if it existed, was ignored, the Designee concluded that the selection of GTL for contract negotiations was consistent with the terms of the 2012 RFP. We do not believe that the Designee abused his discretion here by not holding a

hearing on JPay's allegations concerning GTL's prior experience.

Accordingly, we conclude that the Designee properly denied JPay's third ground for protest. The Determination of the Designee is affirmed.

### ORDER

AND NOW, this 8th day of April, 2014, the order of the Governor's Office of Administration dated April 4, 2013, at Protest Docket No.: 2013–01AD2013 is hereby AFFIRMED.