CONCURRING AND DISSENTING OPINION BY JUDGE COVEY I agree with the Majority’s ruling that Christine A. Reuther’s and Ani Marie Dia-katos’ (Objectors) Emergency Petition for Relief Regarding the November 2017 General Election (Petition) seeking to strike Christine Rossi (Candidate) from the general election ballot was timely filed. However, I respectfully dissent from the Majority’s ruling that although Section 15.3(e) of the State Ethics Commission’s (Ethics Commission) Regulations (Regulation) is mandatory, it will not enforce the consequence of Candidate’s noncompliance with the law and Delaware County Bureau of Election’s (Bureau) specific instruction to timely submit her Statement of Financial Interests (SOFI) to the Bureau and Nether Providence Township (Township), thereby, allowing Candidate’s name to appear on the ballot. The Majority’s holding is in complete derogation of the General Assembly’s clear intent in the Public Official and Employee Ethics Act (Ethics Act),[1] rewrites the Regulation, creates two classes of candidates (those nominated by petition/paper (Nomination Candidates) and those nominated by write-in (Write-In Candidates)), and treats these two classes of candidates in distinctly different manners resulting in fundamental unfairness. In interpreting the Ethics Act and the Regulation, “[o]ur rules of statutory construction make clear that ... we must at all times seek to ascertain and effectuate the legislative intent underlying the enactment of the particular statute(s). 1 Pa.C.S. § 1921(a).” Pa. Fin. Responsibility Assigned Claims Plan v. English, 541 Pa. 424, 664 A.2d 84, 87 (1995). The Majority rules that a nominee’s and a candidate’s filing of his/her SOFI is mandatory. This conclusion is firmly founded upon the General Assembly’s unequivocal declaration] that the people [of this Commonwealth] have a right to be assured that the financial interests of holders of or nominees or candidates for public office do not conflict with the public trust. [Thus, the Ethics Act] shall be liberally construed to promote complete financial disclosure as specified in this [Ethics Act]. Section 1101.1(a) of the Ethics Act, 65 Pa.C.S. § 1101.1(a) (emphasis added). The General Assembly further evidenced its intent that nominees and candidates must disclose their financial interests before becoming a nominee or candidate in its definition of “candidate” as one who has “taken the action necessary under the laws of this Commonwealth to qualify [her]self for nomination or election ....” 65 Pa.C.S. § 1102 (emphasis added). The General Assembly specifically included Write-In Candidates in that definition,[2] thereby not distinguishing between Nomination Candidates and Write-In Candidates, but rather requiring all candidates to adhere to the Commonwealth’s laws in order to “qualify” “for nomination or election.” 65 Pa.C.S. § 1102. To “qualify”[3] means to “possess[ ] [ ] qualities ... legally necessary to make one eligible for a. position or office, or to perform a public duty or function[.]” Black’s Law Dictionary 1360 (9th ed. 2009). Similarly, Merriam-Webster’s Collegiate Dictionary (11th ed. 2004) defines “qualify” as “to invest with legal capacity ... [;] to become fit (as for an office)[;] ... to meet the required standard!);] ... to acquire legal or competent power or capacity!.]” Id. at 1017. Accordingly, Candidate must be qualified for election. I part ways with the Majority when it concludes that “Section 15.3(e) of the Ethics Commission’s [Regulations requires Candidate, as a write-in ... to file her SOFI [within a specified time] ... [but] does not ... make the filing of a SOFI A . a condition precedent to Candidate’s name appearing on the ... ballot.” Majority Op. at 745. The Ethics Act states when and where a Nomination Candidate must file his/her SOFI and thé consequences for failure to do so. A Write-In Candidate, by definition, does not follow that procedure. However, the Ethics Commission, as authorized by the General Assembly, promulgated regulations to implement the Legislature’s intended purpose of the Ethics Act.[4] In fulfillment of its duty and in accordance with the Ethics Act, the Ethics Commission promulgated the Regulation to clearly communicate, with the force of law, that a Write-In Candidate shall file his/her SOFI at a certain place by a date certain. The Majority acknowledges that the Regulation mandates: . A write-in[ ]candidate shall file a [SOFI] within 30 days of having been nominated or elected unless the person declines the nomination or office within that period of time. (1) The [SOFI] shall be filed with the [Ethics] Commission for State[-]level public office and with the governing authority of the political subdivision wherein the person has been elected or nominated for county or local level office. (2) For the purposes of calculating the 30-day period during which the [SOFI] shall be filed, the time shall commence on the date that the appropriate board of elections certifies the individual as the winner of a nomination or election. 51 Pa. Code § 15.3(e) (emphasis added). The Majority further recognizes that this “[R]egulation is [the Ethics Commission’s] exercise of delegated legislative power to create a mandatory standard of behavior,” namely, that a Write-In Candidate must file a SOFI with the local governing authority within a 30-day period. Moyer v. Berks Cnty. Bd. of Assessment Appeals, 803 A.2d 833, 842 (Pa. Cmwlth. 2002) (quotation marks omitted; emphasis added). Notwithstanding this legal requirement, the Majority concludes that because the Regulation does not state that failure to file a SOFI constitutes a “fatal defect,” Write-In Candidates are held to a different, more lenient standard. In addition, the Majority authorizes Write-In Candidates who have failed to timely file their SOFIs to have their names placed on the ballot despite the fact that the law, le., the Regulation, is to the contrary, and similarly-situated Nomination Candidates who have failed to timely file their SOFIs will not have their names appear on the ballot. The. law is well settled that, “[i]n ascertaining the intention of the General Assembly in the enactment of a statute[,]” it is.presumed “[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.” 1 Pa.C.S. § 1922(1). The Majority’s result is unreasonable, negates the Ethics Act’s clearly-stated purpose, renders the General Assembly’s mandatory language directory,[5] and completely eviscerates the Ethics Commission’s regulatory mandate. Moreover, wheh interpreting a statute, this Court is not authorized to interpret it in such a manner that creates “[disorderly, [unjfair, and [injefficient administration of public elections in Pennsylvania;”[6] In re Nomination Petition of Guzzardi, 627 Pa. 1, 99 A.3d 381, 386 (2014). However, that-is another result of the Majority’s ruling.[7] The Bureau properly notified Candidate in its June 2, 2017 letter (June 2, 2017 Letter) that she was certified as the Republican candidate for Township Tax Collector and expressly instructed: Write-In Candidates who wish their name to appear on the November 2017 ballot are required to file with the [Bureau] on or before June 30, 2017 a Candidate’s Affidavit/Waiver of Expenses Account Reporting Affidavit ... 'and a [SOFI].... Upon completion of the above[-]referenced documents, please return them to the [Bureau] and the governing authority for the office in which you were nominated so that your name can be placed on the November ballot. June 2, 2017 Letter (underlining and bold emphasis added). Despite this notice, Candidate did not qualify herself for election and the Majority’s ruling allows her name to be placed on the ballot, notwithstanding that the Majority has acknowledged that if Candidate were a Nomination Candidate, as opposed to a Write-In Candidate, it would not permit her name to be on the ballot. While- the Majority concedes that the Regulation mandates that Candidate “shall” file her SOFI with the Township and “shall” file it within 30 days of the Bureau’s certification, Majority Op. at 745-46 n.17; see also 51 Pa. Code § 15.3(e), and that “[t]he word ‘shall’ by definition is mandatory, and it is generally applied as such[,] Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors, 592 Pa. 100, 923 A.2d 1099, 1104 (2007)[,]” the Majority concluded that this Court did not have the authority to address the consequence for the failure to comply with a legal mandate. However, the Pennsylvania Supreme Court and this Court’s case law does not support that conclusion. The law is well-settled that “[w]hile both mandatory and directory provisions of the legislature are meant to be followed, the difference between a mandatory and directory provision is the consequence, for noncompliance.” JPay, Inc. v. Dep’t of Corr., 89 A.3d 756, 763 (Pa. Cmwlth. 2014) (emphasis added). This Court has further explained the differences between mandatory and directory statutes: In In re: Sale of Real Estate by Lackawanna County Tax Claim Bureau, 22 A.3d 308 (Pa. Cmwlth. [2011]) (Lackawanna County), ... we explained: .... Failure to follow a mandatory statute renders the proceedings[8] void, whereas failure to follow a directory statute does not. Lackawanna Cnty., 22 A.3d at 314 (citations omitted) (quoting W. Penn Power Co. v. Pa. Pub. Util. Comm’n, 104 Pa. Cmwlth. 21, 521 A.2d 75, 78 ([Pa. Cmwlth.] 1987)). ‘Both mandatory and directory provisions of the legislature are meant to be followed. It is only in the effect of non-compliance that a distinction arises.’ Id. (quoting Dep’t of Transp., Bureau of Driver Licensing v. Claypool, 152 Pa.Cmwlth. 332, 618 A.2d 1231, 1232 (1992)). ‘[F]ailure to strictly adhere to the requirements of a directory statute will not nullify the validity of the action involved.’ JPay, Inc.[, 89 A.3d at 763]. The ‘failure to follow a directory provision will render such proceedings voidable under only certain circumstances.’ Womack v. Workers’ Comp. Appeal Bd. (Sch. Dist. of Phila.), 83 A.3d 1139, 1142-43 (Pa. Cmwlth. [2014])[.] In re Condemnation by Commonwealth, Dep’t of Transp., of Right-of-Way for State Route 0095, Section BSR, 131 A.3d 625, 631-32 (Pa. Cmwlth. 2015) (emphasis added). “Void” means “of no legal effect; null.” Black’s Law Dictionary at 1709 (emphasis added). Our Supreme Court has ruled: [Section 306(a.2)(l) of the Workers’ Compensation Act (Act),[9] 77 P.S. § 511.2(1),] imposes a mandatory obligation on the insurer to request an IRE within the time limits specified. ‘A mandatory provision is one the failure to follow which renders the proceeding to which it relates illegal and void.’ In re Nomination Papers of Am[.] Labor Party, 352 Pa. 576, 44 A.2d 48, 50 (1945); Mullen v. Bd. of Sch. Dirs[.] of DuBois Area Sch. Dist., 436 Pa. 211, 259 A.2d 877, 881 (1969); P[a.] State Police, Bureau of Liquor Control Enforcement v. Gen[.] Davis, Inc., 537 Pa. 319, 643 A.2d 670, 672 (1994). Where statutory provisions are mandatory, we have held as a general rule that they cannot be waived, and substantial compliance is not sufficient.[10] [Am. Labor Party,] 44 A.2d at 50; Commonwealth v. Lukens Steel Co., 402 Pa. 304, 167 A.2d 142, 144 (1961). Accordingly, in the instant case, because the IRE request did not comply with the requirements of [S]ection [306(a.2)(1) of the Act], the IRE itself is void. Dowhower v. Workers’ Comp. Appeal Bd. (CAPCO Contracting), 591 Pa. 476, 919 A.2d 913, 918 (2007) (emphasis added). There is no question that the General Assembly intended, by the Ethics Act’s clear language, to require all candidates for public office to file their SOFIs in a particular place and by a date certain, under penalty of their names not appearing on the ballot. The Majority’s ruling undermines both the General Assembly’s stated purpose and the Regulation’s mandate by allowing Write-In Candidates to freely disregard the Ethics Act. Such a conclusion ignores the Legislature’s purpose of assuring “that the financial interests of ... candidates for public office do not conflict with the public trust,” and “promot[ing] complete financial disclosure!.]” [11] 65 Pa.C.S. § 1101.1 (emphasis added); see also Chanceford Aviation Props., L.L.P. The Majority’s holding also removes the General Assembly’s requirement that Nomination Candidates and Write-In Candidates comply with the Commonwealth’s laws to qualify for election. Moreover, the Majority’s ruling completely ignores the General Assembly’s directive that the “[Ethics Act] shall be liberally construed to promote complete financial disclosure as specified in this [Ethics Act]” before a candidate’s name is placed on the ballot. 65 Pa.C.S. § 1101.1(a). Certainly, “[i]f the legal consequence of failing to comply with a directory provision were the same as that for failing to comply with a mandatory provision, there would be no meaningful distinction between the two.” Texas Dep’t of Pub. Safety v. Dear, 999 S.W.2d 148, 152 (Tex. App. 1999). . Clearly, the Regulation makes Candidate’s filing of her SOFI with both the Bureau and the Township a mandatory condition to qualify as a candidate and, thus, have her name appear on the general election ballot.[12] Both the Regulation and the Bureau’s June 2, 2017 Letter put Candidate on notice of that fact.' Neither this Court nor the Ethics Commission may interpret the Ethics Act or the Regulation otherwise. Because Candidate did not timely file her SOFI with the Township, she did not comply with the law and is not qualified to be a candidate. " Accordingly, I believe this Court is constrained to rule that Candidate’s name may not appear on the general election ballot dufe to her failure to file her SOFI with the Township in accordance with, and as mandated by, the Regulation, which was promulgated to implement the General Assembly’s stated Ethics Act purpose. Based on the foregoing, I would reverse the trial court’s order. . 65 Pa. C.S. §§ 1101-1113. . "The term [candidate] shall include individuals nominated or elected as write-in candidates unless they resign such- nomination or elected office within 30 days of having been nominated or elected.” 65 Pa.C.S. § 1102 (emphasis added). . Section 1903(a) of the Statutory Construction Act of 1972 states, in relevant part: "Words ... shall be construed according to rules of grammar and according to their common and approved usage[.]” 1 Pa.C.S § 1903(a). "As the legislature did not define [the term 'qualify' in the Ethics Act], its common and approved usage may be ascertained by examining its dictionary definition.” Commonwealth v. Hart, 611 Pa. 531, 28 A.3d 898, 909 (2011). . Section 1107(1) of the Ethics Act states: "In addition to other powers and duties prescribed by law, the [Ethics C]ommission shall ... [prescribe and publish rules and regulations to carry out the provisions of [the Ethics Act].” 65 Pa.C.S. § 1107(1). . "To hold that a provision is directory rather than mandatory, does not mean that it is optional — to be ignored at will. Both mandatory and directory provisions of the legislature are meant .to be followed. It is only in the effect of non-compliance that a distinction arises.” Borough of Pleasant Hitts v. Carroll, 182 Pa.Super. 102, 125 A.2d 466, 469 (1956). . Despite that the "fatal defect” language did not appear in the Ethics Act until it was amended in 1989, see In re Nominating Petition of Olshefski, 692 A.2d 1168 (Pa. Cmwlth. 1997), this Court nevertheless deemed the failure fatal to one's candidacy. In State Ethics Commission v. Landauer, 91 Pa.Cmwlth. 70, 496 A.2d 862 (1985), the Ethics Commission sought to have primary-candidates who did not file SOFIs,declared ineligible to be on the ballot because former Section 4(d) of the Ethics Act, 65 P.S. § 404(d), prohibited candidates who failed to comply with the Ethics Act’s requirements from holding office. Two candidates argued that since they were unopposed, their error should not disqualify them. This Court stated; We do not believe ... that the legislature intended to excuse such candidates from the [Ethics] Act’s [SOFI filing] requirements. We do belieye, rather, that it would be unwise to create or permit such an exception. The [Ethics] Act’s intent is clearly to make available for public consideration, during the selection process, certain financial information regarding candidates so that the voters may determine what interests a candidate may have which might affect his conduct in office .'... It must be remembered that voters may cast ‘write-in’ votes for candidates whose names do not appear on a ballot, Moreover, to endorse a case[-]by[-]case exemption based on such circumstances would place an inordinate burden on the [Ethics] Commission and would frustrate the [Ethics] Act’s avowed purpose to ensure that the required information is made available in a timely fashion. Landauer, 496 A.2d at 864 (emphasis, added). The Ethics Act’s purpose under the former law was similarly stated; The Legislature hereby declares that public office is a public trust and that any effort to realize personal financial gain through public office other than compensation provided by law is a violation of that trust. In order to strengthen the faith and confidence of the people of the [s]tate in their government, the Legislature further declares that the people have a right to be assured that the financial interests of holders of or candidates for public office present neither a conflict nor the appearance of a conflict with the public trust. Because public confidence in government can best be sustained by assuring the people of the impartiality and honesty of public officials, this [Ethics] Act shall be liberally construed to promote complete disclosure. ■ Snider v. Thornburgh, 496 Pa. 159, 436 A.2d 593, 597 (1981) (quoting Section 1 of the former Ethics Act, 65 P.S. § 401). We acknowledge that the Landauer Court relied upon State Ethics Commission v. Baldwin, 498 Pa. 255, 445 A.2d 1208 (1982), which was superceded by statute, but given the former and current Ethics Acts’ nearly identical statutory purposes, this Court should continue to apply its rationale in Landauer, and refuse to treat similar candidates differently under the current Ethics Act, We further note that although the former Ethics Act did not contain "fatal defect” language, our Supreme Court did recognize that “if the information required by the [SOFIs] was, [not] in fact, subsequently received and was inot ] otherwise available for the purposes envisioned by the [Ethics ] Acti ]" it was "fatally taint[ed.]” Landauer, 496 A.2d at 864. . The Majority seeks to offer a "rational explanation” for its "disparate treatment” of Nomination Candidates and Write-In Candidates. In doing so, it- creates a new category of candidate which it labels "would-be candidate” and defines as one who "petitions to appear on the ballot and .., does not become a candidate until she files the SOFI.” Majority Op. at.747 n.19. Neither the .Ethics Act nor its regulations contain any language that permits disparate treatment among candidates nor recognizes the existence of a "would-be candidate.” As discussed above, the Ethics Act clearly defines candidate as one who has "taken the action necessary under the laws of this Commonwealth to qualify [her]self for nomination or election ....” 65 Pa.C.S. § 1102. The Ethics Act and its regulations specifically provide what steps a Nomination Candidate and Write-In Candidate must complete to be "qualified” for nomination or election. In essence, a Nomination Candidate must obtain a required number of signatures on a petition/paper and file the petition/paper, along with a SOFI, at a specified place by a date certain; while the Write-In Candidate must be elected and file a SOFI at a specified place by a date certain. These requirements reflect no disparate, treatment. . The reference to “proceedings” does not prohibit this Court from applying the holding to this case. Our Supreme Court has explained: The distinction between a mandatory and a directory statute lies in the effect of noncompliance upon the transaction involved — not in the liability of the person who has violated the statute. Failure to conform to a mandatory procedure renders the regulated activity a nullity. Strict compliance with a directory provision, on the other hand, is not essential to the validity of the transaction or proceeding involved. Fishkin v. Hi-Acres, Inc., 462 Pa. 309, 341 A.2d 95, 98 n.5 (1975) (emphasis added); see also Dubin v. Cnty. of Northumberland, 847 A.2d 769 (Pa. Cmwlth. 2004). . Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1-1041.4, 2501-2708. .The Majority interprets the law otherwise by stating "the failure of a write-in candidate to file a SOFI within the thirty-day period is not [a] fatal defect in the absence of the fatal defect language. Instead, it may be corrected prior to election and, therefore, would be an amendable defect.” Majority Op. at 746 n.18. . That is not the law. First, the SOFI filing requirement is mandatory. As such “substantial compliance [with the SOFI filing requirements] is not sufficient.” Dowhower, 919 A.2d at 918. Second, where no filing has occurred, there is no document in existence to amend. In In re Paulmier, 594 Pa. 433, 937 A.2d 364 (2007), our Supreme Court specifically declared that "Section 1104 of the Ethics Act was intended by the Legislature to bar only those candidates from the ballot who fail to file [SOFIs] or who file them in an untimely maimer.” Id. at 371. Thus, only where a SOFI is timely filed, would it be amendable. As the Paulmier Court expressly held: Section 1104 does not bar any candidate from the ballot if he or she files in a timely manner, even if there are defects on the face of the form, so long as that candidate subsequently amends the form to correct the defect and comes into compliance with the Act in a timely manner. In other words, all defects related to the content of disclosures on a timely filed statement of financial interest are subject to timely amendment. Id. at 371 (emphasis added). Although Section 1104 of the Ethics Act does not apply to Write-In Candidates, the Regulation mandates Write-In Candidates to file SOFIs. By treating Write-In Candidates’ untimely SOFI filings as amendable where Nomination Candidates’ untimely filings are treated as fatally flawed, the Majority creates a nonexistent, unwarranted and unfair distinction between such candidate types, which unequivocally undermines the General Assembly’s clearly-stated intent. . The Majority admits that "there could be an instance where a candidate failed to file a SOFI ... but the failure goes unchallenged.” Majority Op! at 744 n.12. This Court should be loath to find that possibility acceptable given the General ■ Assembly’s purpose, and the Ethics Commission’s attempt by the Regulation to prevent such a situation from occurring. . Notwithstanding, the Majority "interpret[s] this language as requiring a successful write-in candidate to affirmatively act within 30 days to decline the nomination. Otherwise, it is presumed that the candidate has accepted the nomination and will file the SOFI.” Majority Op. at 745 n.14. Under the Majority’s interpretation, a cándidate can be elected in the primary election without any knowledge that he/she was in fact a Write-In Candidate and his/her name will automatically appear on the general election ballot without the individual needing to disclose his/her finan» cial interests. Clearly, this was not the General Assembly's intent.