# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| InGenesis, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 818 C.D. 2025 |
| | : | |
| Department of General Services, | : | |
| Respondent | : | Argued: April 13, 2026 |

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                                    FILED:  May 8, 2026

InGenesis, Inc. (Petitioner) petitions for review from the June 24, 2025 final determination (Final Determination) of the Pennsylvania Department of General Services (DGS).  DGS denied Petitioner's bid protest on the basis that the protest lacked merit. After careful review, we affirm.

On January 22, 2024, DGS issued Request for Proposal Number 6100058189 (RFP) for contracted medical staffing services.  The RFP consisted of three lots to be awarded to at least two different offerors:  Lot 1 (nursing professionals), Lot 2 (medical and therapy professionals), and Lot 3 (ancillary professionals).  The RFP set forth the following process for scoring and selecting proposals, as found by DGS in the Final Determination:

> 4. The percentage of points assigned to the evaluation of
> technical responses for the RFP was 65% of the total

points. Evaluation of the technical was based upon soundness of approach, demonstrations, offeror qualifications, personnel qualifications, and understanding the problem.

5. The RFP included requirements regarding offeror responsibility . . . . [T]o be considered responsible and eligible for selection for best and final offers (BAFOs) or contract negotiations, the total score for the technical submittal of the offeror's proposal must be greater than or equal to 75% of the available technical points.

6. The RFP also described the process for BAFOs. The RFP [d]escription [s]ection stated that the [i]ssuing [o]ffice reserved the right to conduct discussions with offerors for the purpose of obtaining BAFOs in one or more of the following ways, in any combination and order: schedule oral presentations, request revised proposals, conduct an online auction, and enter into pre-selection negotiations.

7. The RFP also described the final ranking and award of the RFP. It stated that: After any best and final offer process is conducted, the [i]ssuing [o]ffice will combine the evaluation committee's final technical scores, the final cost scores, and the domestic workforce utilization scores. The [i]ssuing [o]ffice will rank responsible [o]fferors according to the total overall score assigned to each in descending order. The [i]ssuing [o]ffice must select for contract negotiations the [o]fferor with the highest overall score.

Final Determination,[1] Findings of Fact (F.F.) 4-7 (internal citations omitted).

Petitioner submitted proposals for all three lots. On November 27, 2024, DGS notified Petitioner it was not selected for negotiations. DGS awarded contracts for Lots 1 and 3 to 22nd Century Technologies, Inc. (22nd Century) and a contract for Lot 2 to MHM Solutions, LLC (MHM) (together with 22nd Century,

_____

[1] The Final Determination is found at pages 798a-806a of the Reproduced Record (R.R.).

2

Awardees).  DGS's award indicated Petitioner failed to meet the 75% technical scoring threshold for Lots 1 and 2.  Final Determination, F.F. 11.  On April 14, 2025, Petitioner filed protests of all awards on various bases, and DGS stayed the awards pending the protest.  DGS's Chief Procurement Officer (CPO) Kelly Martini reviewed the protest and recommended it be denied.  Executive Deputy Secretary of DGS Sandra Aguilera denied the protest by final determination on June 24, 2025.  Relevant to this appeal, the Deputy Secretary reasoned as follows:

### 2. Non-Compliance with QIO[2] Requirement

. . . .

[According to DGS's clarification of the RFP's technical QIO requirement,] if the selected offeror is not QIO or QIO-Like certified, then it must identify its subcontractors that are QIO or QIO-Like certified that can meet the needs of the Commonwealth. In the original protest, [Petitioner] claimed that 22nd Century and MHM are not QIO or QIO-Like accredited but did not address the fact that each of the selected offerors could have included subcontractors that are QIO or QIO-like certified in their proposals . . . .

In her response to the protest, CPO Martini, stated that, although 22nd Century is not QIO or QIO-like certified, it did identify two subcontractors who are QIO-like certified partners. She also noted that MHM held a QIO-like certification at the time of proposal submission and is in the process of recertifying which will be complete before the contract is implemented. Further, one of MHMs subcontractors is in the process of receiving its QIO-like certification as well. Therefore, both 22nd Century and MHM also met the requirements of the RFP.

---

[2] The RFP required that "the selected Offeror must be Quality Improvement Organization (QIO) Certified or QIO-like certified, which allows agencies (as applicable) to request a federal funding match of 75% / 25%.  If selected Offeror is not QIO, or QIO-like certified, it must identify its subcontractors that are QIO, or QIO-like certified, that can meet the needs of the Commonwealth."  R.R. at 765a-67a.

3

It is important to note that compliance with the QIO or QIO-Like accreditation requirement was not a mandatory requirement for the RFP. The RFP Description Section 16, Mandatory Responsiveness Requirements, listed four requirements that are not waivable. The four requirements were listed as: 1) the proposal must be timely received and submitted, 2) the proposal must be electronically signed by the offeror, 3) the proposal must contain a completed [small diverse business] participation submittal, and 4) the proposal must contain a completed [veteran business enterprise] participation submittal. Further, in Section 14, Proposal Submission, the language states that the Mandatory Responsiveness Requirements as set forth in Section 16 are the only RFP requirements that the Commonwealth will consider to be not waivable. The Commonwealth specifically reserved the right to waive any other technical or immaterial nonconformities in the offerors' proposals.

The QIO or QIO-like certification requirement was not a mandatory requirement of the RFP, but rather a component of the scored technical submittal . . . .

**3. Failure to Hold Discussions with [Petitioner]**

. . . .

[Section 513(f) of the Procurement Code (Code), 62 Pa.C.S. § 513(f)[3]] allows the contracting officer to have discussions and negotiations with responsible offerors for the purpose of clarifications and obtaining best and final

---

[3] Section 513(f), 62 Pa.C.S. § 513(f), states:

**Discussion with responsible offerors and revision of proposals.--**As provided in the request for proposals, discussions and negotiations may be conducted with responsible offerors for the purpose of clarification and of obtaining best and final offers. Responsible offers shall be accorded fair and equal treatment with respect to any opportunity for discussion and revision of proposals. In conducting discussions, there shall be no disclosure of any information derived from proposals submitted by competing offerors.

offers. The subsection further requires that all responsible offers are afforded fair and equal treatment with respect to any opportunity for discussion and revision of proposals. I note that this subsection does not require discussions or negotiation with responsible offerors; just that if those discussions or negotiations occur, all responsible offerors are allowed to participate.

[Petitioner] alleges that DGS held discussions with 22nd Century and MHM but offers no proof of such discussions . . . . If what [Petitioner] is arguing is that, by entering into negotiations with MHM and 22nd Century once all evaluations were completed and the Recommendation for Contractor Selection Memorandum signed, DGS held "discussions" with those offerors, [Petitioner] is clearly not understanding [Section 513(g) of the Code, 62 Pa.C.S. § 513(g),[4]] which sets forth the authority to select offerors for negotiation. Those negotiations are not the same as the discussions provided for in Subsection 513(f); they are done after all evaluations (cost and technical) are complete and an offeror is selected for negotiation as set forth in Subsection 513(g) . . . . Actual negotiations with selected the selected [sic] Offerors, 22nd Century and MHM, were authorized by Subsection 513(g) . . . .

**4. Improper Best Value Determination**

[Petitioner] next argues that DGS made an improper best value determination in selecting 22nd Century and alleges that 22nd Century is only a technology company and therefore does not have the experience required for a healthcare staffing services contract of the size of the Commonwealth's . . . .

. . . .

---

[4] Section 513(g), 62 Pa.C.S. § 513(g), states:

**(g) Selection for negotiation.--**The responsible offeror whose proposal is determined in writing to be the most advantageous to the purchasing agency, taking into consideration price and all evaluation factors, shall be selected for contract negotiation.

The actual definition of best value in the Procurement Handbook is "the process of selecting the offer which provides the greatest value to the agency based on evaluating and comparing all pertinent factors, including price, so that the overall combination that best meets the agency's needs is selected . . . ." [Petitioner] appears to be arguing that experience was the only factor that the evaluation committee could consider as part of the technical evaluation. While that was clearly not the case, [Petitioner] also does not provide any factual information regarding its allegation that 22nd Century is not qualified.

. . . .

**6. Failure to Debrief**

Once the award was posted, all offerors who submitted a proposal were able to request a debriefing. Due to the number of proposals received . . . [,] DGS was still attempting to schedule all requested debriefings . . . .

I find this argument to be clearly without merit and now moot as a debriefing has been conducted.

Final Determination at 3-8 (some internal citations and quotation marks omitted). Petitioner petitioned this Court for review.

On appeal,[5] Petitioner raises four issues in which it argues DGS erred: (1) neither Awardee met the QIO requirements at submission, and the QIO requirements were mandatory and nonwaivable; (2) DGS held discussions with Awardees but not with Petitioner; (3) DGS improperly determined best value in regards to 22nd Century; and (4) DGS failed to schedule a debriefing until after the time for submitting a protest.

---

[5] Our review is limited to considering "whether the determination of [DGS] [was] arbitrary and capricious, an abuse of discretion or contrary to law." *JPay, Inc. v. Dep't of Corr.*, 89 A.3d 756, 761 n.2 (Pa. Cmwlth. 2014).

6

First, regarding the QIO status, Petitioner argues that the two QIO-like subcontractors 22nd Century identified cannot "meet the needs of the Commonwealth" because those subcontractors cannot control whether other subcontractors will contribute to QIO needs. Petitioner also argues MHM was essentially between QIO certifications at the time of selection, with its prior certification having lapsed after submission, so DGS erred in relying on MHM's effort to get recertified as a basis for meeting this requirement. Finally, Petitioner argues the QIO requirements are mandatory.

In response, DGS emphasizes that the QIO requirement is waivable at the discretion of DGS, which can only be disturbed if it is arbitrary, an abuse of discretion, or contrary to law. DGS states responsibility of a bidder and responsiveness of a proposal are determined at the time of submission, not at the time of award. DGS argues its public clarification made during the bid process supports its action here. DGS would determine QIO compliance, including by considering subcontractors and exercising its discretion to ensure the Commonwealth's QIO needs were met. DGS did not bear a burden to prove or quantify how specific subcontractors would meet those needs; it was only required to reasonably determine that they could. In reply, Petitioner claims DGS was required to support its reliance on subcontractors with specific evidence from the record. Regarding MHM, Petitioner disputes DGS's assertion that submission is the relevant time for determining QIO compliance.

We initially agree with DGS that the technical QIO requirements of the RFP were waivable at DGS's discretion. "[W]here the requirements in an RFP are not mandated by statute and the RFP reserves the right to waive defects, a non-compliant submission may be waived." *JPay, Inc. v. Dep't of Corr.*, 89 A.3d 756,

7

766 (Pa. Cmwlth. 2014). The RFP includes four "mandatory" criteria. Reproduced Record (R.R.) at 5a. QIO compliance was not listed as mandatory, so it was "waivable by [DGS] *per se.*" *KPMG LLP v. Dep't of Hum. Servs.*, 276 A.3d 308, 314 (Pa. Cmwlth. 2022). Further, we agree with DGS that it did not abuse its discretion on these criteria. DGS determined that 22nd Century's two QIO-like certified subcontractors were sufficient to meet the needs of the Commonwealth, and Petitioner has not explained how that is inconsistent with the record. For MHM's certification, "the key inquiry must be whether offerors [meet the requirement] at the time they submit their initial proposals." *Language Line Servs., Inc. v. Dep't of Gen. Servs.*, 991 A.2d 383, 389 (Pa. Cmwlth. 2010). MHM was QIO certified at that time, and DGS exercised its discretion in making an award, knowing that MHM was pursuing recertification. We conclude that DGS did not abuse its discretion or act arbitrarily or capriciously in finding Awardees satisfied the QIO requirement.

Second, Petitioner argues the discussions DGS had with Awardees were pursuant to Section 513(f) of the Code because no other section of the Code expressly provides for discussion. Petitioner insists DGS was obligated to engage in similar discussions with Petitioner and never did so. DGS maintains that it never held discussions under Section 513(f), but only discussed with Awardees incidentally under Section 513(g) as part of final negotiation of contracts after the awards. We agree with DGS that its discussions with Awardees were not under Section 513(f). DGS found the communications with Awardees occurred after evaluation of proposals was completed and the internal recommendation for the award was signed. *See* Final Determination at 5-6. Discussions under Section 513(f) are performed before the evaluation is complete and as part of the evaluation. *See id.* at 6. We find no error in DGS's determination that discussions with Awardees

8

here were part of contract negotiation under Section 513(g), nor any evidence that pre-evaluation discussions occurred that would require DGS to extend the same to Petitioner.

Third, Petitioner argues DGS abused its discretion in its best value determination for 22nd Century, which has experience with different medical staffing services in smaller contracts in the past, so it does not meet the RFP's experience requirement. DGS responds that it has significant discretion to determine best value by considering all factors for best value in the RFP, not just one factor alone. It notes that, once again, Petitioner has not shown how the record or findings undermine DGS's discretionary determination that 22nd Century's experience was sufficiently similar to qualify it for a best value finding. We agree with DGS. Experience, like other factors that are not mandatory under the RFP, is subject to DGS's discretion and a "purported lack of experience with similar projects does not rise to the level that it would deprive" DGS of that discretion. *JPay*, 89 A.3d at 767. Beyond Petitioner's assertions that 22nd Century's experience is, in its judgment, insufficient, we cannot say DGS abused its discretion.

Fourth and finally, Petitioner argues DGS did not timely comply with the RFP's requirement to debrief Petitioner after the award. Petitioner acknowledges that it was eventually debriefed, but not until "long after the protest period expired." Petitioner's Br. at 19. DGS responds that Petitioner has not shown prejudice from the timing of the debriefing. It also points out that the RFP did not promise a debriefing during the protest period. *See* R.R. at 7a. In reply, Petitioner asserts it was prejudiced because a debriefing could have revealed further bases for protest, though Petitioner does not specifically identify any such basis. We agree that DGS complied with the debrief process set out in the RFP. The RFP does not establish a

9

time certain and notably states the debriefing will "not toll the time for filing a protest." *Id.* Additionally, we are not persuaded that Petitioner suffered any prejudice, given its failure to identify prejudice with specificity. We conclude DGS's determination on this issue was not erroneous.

For these reasons, we conclude DGS's Final Determination was not arbitrary, capricious, an abuse of discretion, or contrary to law. Accordingly, we affirm the Final Determination.

_____
MATTHEW S. WOLF, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

InGenesis, Inc.,                                       :
                            Petitioner                 :
                                                       :
            v.                                         :     No.  818 C.D. 2025
                                                       :
Department of General Services,                        :
                            Respondent                 :

# **O R D E R**

AND NOW, this 8th day of May 2026, the June 24, 2025 final determination of the Department of General Services is hereby AFFIRMED.

_____
MATTHEW S. WOLF, Judge